PEOPLE v WILDER

Docket No. 61305. Argued March 6, 1979 (Calendar No. 7).—Decided
    July 13, 1981. Rehearing denied *post*, 1157.

Ronald T. Wilder and a codefendant were convicted by a jury in
    Recorder's Court of Detroit, Henry L. Heading, J., of first-
    degree murder in the perpetration of a robbery and of the
    armed robbery from which the felony-murder charge arose. The
    trial court instructed the jury that premeditation and delibera-
    tion are supplied by law if a person is killed in the perpetration
    of a robbery. The Court of Appeals, Beasley, P.J., and Bashara,
    J. (D. C. Riley, J., dissenting in part), affirmed the defendant's
    conviction of first-degree murder, but reversed his conviction of
    armed robbery on the ground that it was a necessary element
    of the first-degree murder *rather than a separate crime* (Docket
    No. 77-1305). The parties appeal on the questions whether a
    specific instruction on malice must be given in a trial for
    murder in the perpetration of a felony listed in the statute and
    whether convicting the defendant of both first-degree murder
    and the underlying felony violates the prohibition on double
    jeopardy. *Held:*

    Conviction both of the murder in the perpetration of the
    felony and of the underlying felony violates the state constitu-

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide § 41 *et seq.*
[2, 3] 40 Am Jur 2d, Homicide, §§ 72, 499, 500.
[3] 40 Am Jur 2d, Homicide §§ 72, 509.
    67 Am Jur 2d, Robbery § 90.
[4, 15] 21 Am Jur 2d, Criminal Law § 579.
    40 Am Jur 2d, Homicide §§ 72, 513
    67 Am Jur 2d, Robbery § 90.
    73 Am Jur 2d, Statutes § 300.
[5] 21 Am Jur 2d, Criminal Law § 189.
[6, 7, 10, 11, 15, 16] 21 Am Jur 2d, Criminal Law § 182 *et seq.*
[7] 40 Am Jur 2d, Homicide § 72.
[8] 21 Am Jur 2d, Criminal Law § 187.
[9] 40 Am Jur 2d, Homicide § 72.
[10, 12-14] 21 Am Jur 2d, Criminal Law § 579.
    73 Am Jur 2d, Statutes § 300.

tional prohibition against double jeopardy. The defendant's conviction of first-degree murder is reversed because the instruction to the jury on malice was erroneous. The defendant's conviction of armed robbery is reinstated. If the prosecuting attorney is persuaded that the ends of justice would be better served by retrial for first-degree murder, a new trial on both charges may be conducted on remand.

1. The common-law "felony-murder rule", which allowed the element of malice to be supplied from the intent to commit the underlying felony so as to make the killing murder, has now been abolished in Michigan to the extent that it was in force. In a trial for felony murder, the trial court must instruct the jury on the element of malice necessary for murder because the underlying felony itself will not provide that element; the conclusion must be left to the jury to infer from all of the evidence, including the facts and circumstances of the perpetration of the felony. The instructions given to the jury in this case assumed that a killing perpetrated during the commission of armed robbery constitutes first-degree felony murder. The instruction was erroneous and the defendant's conviction of first-degree murder must be reversed.

2. The second issue deals with the imposition of multiple punishment. The statutes in this case are devoid of any ascertainable legislative intent to create more than a single crime or punishment. To the extent that legislative intent is not entirely free of doubt, the doubt must be resolved in favor of lenity. The question thus involves the traditional application of double jeopardy protection as a restraint on imposing double punishment for a single criminal act. The standard of review in such cases focuses upon the proof of facts necessary to conviction rather than upon the theoretical elements of the offense alone. Where the proof adduced at trial indicates that one offense is a necessarily included offense or a cognate included offense of the other, conviction of both offenses is precluded by the Double Jeopardy Clause of the state constitution.

3. The underlying felony is a necessary element of every prosecution for first-degree felony murder. As a matter of state constitutional law, the question is not whether the challenged lesser offense is by definition necessarily included within the greater offense also charged but whether, on the facts of the case at issue, it is. In this case, the greater offense of felony murder could not have been committed without necessarily committing the underlying felony element of the armed robbery. The defendant must necessarily have been found guilty of armed robbery or attempted armed robbery before any convic-

tion of first-degree felony murder could arise incident to the robbery.

4. A defendant may be charged with and tried for each act that constitutes a separate crime. However, when trial is for an act which includes lesser offenses, if the jury finds guilt of the greater, the defendant may not also be convicted separately of the lesser included offense; the prohibition against multiple punishment cannot be avoided by the form of the charge. Consequently, the defendant's conviction of both first-degree felony murder and of the underlying felony of armed robbery constitutes reversible error as a matter of state constitutional law. The requirement of proof of malice to find murder in a felony-murder case does not change the analysis. Proof of the underlying felony is necessary to raise second-degree murder to first-degree murder. The felony still remains as a necessary element to the statutory offense and its proof is required for conviction. The double jeopardy analysis is thus unaffected by the adoption of the new requirement. This result is fundamentally consistent with federal law.

5. In this case, the improper instructions to the jury on the felony-murder charge cast no doubt upon the validity of the conviction of armed robbery. Because the conviction of the greater offense of felony murder is vacated, it is no longer a violation of the prohibition of double jeopardy to allow the conviction of the lesser offense, armed robbery, to stand. Accordingly, the conviction of the lesser offense of armed robbery is reinstated. If the prosecuting attorney is persuaded that the ends of justice would be better served by retrial for first-degree felony murder, he may so advise the trial court and the conviction of armed robbery shall also be vacated and a new trial on both charges may be conducted.

The decision of the Court of Appeals is reversed.

Justice Ryan concurred in the result but he disagreed with the reasoning of the Court as to the double jeopardy issue.

1. The constitutional injunction against being twice put in jeopardy comprises three separate protections, each meant to safeguard different interests. They are: protection against a second prosecution for the same offense after acquittal, protection against a second prosecution for the same offense after conviction, and protection against multiple punishments for the same offense. The question in this case concerns only the protection against multiple punishment. The rule which has emerged is that if the punishment imposed on a defendant, however onerous, is punishment which the Legislature clearly intended to be imposed, the defendant has no recourse under

the Double Jeopardy Clause, because where the Legislature intended to impose multiple punishment, the imposition of such punishment does not violate the constitution.

2. The rule that conviction of both the greater and lesser included offenses, and thus multiple punishment, on proof of a single criminal act is precluded is a rule of statutory construction to be applied only when it is probative of legislative intent. In this case, it is not.

3. The offense of first-degree felony murder is defined by reference to a class of other offenses which includes armed robbery, and therefore proof of the latter is a prerequisite, a predicate, of proof of the former. That a predicate-based offense requires proof of a predicate offense does not mean that the two offenses are greater and lesser included offenses in the traditional sense. The lesser included offense test implicitly assumes that, for committing a single act, the Legislature would not intend a person to be convicted of and punished for two or more offenses that lie on a single continuum of culpability because each continuum comprises those offenses that serve to vindicate the same social norm. The same assumption cannot be made when the Legislature defines an offense by reference to another offense or class of offenses, and an inference of a legislative intent against multiple punishment should not then arise.

4. In this case, the underlying felony does not merge into the felony murder because the statute proscribing armed robbery is designed to protect a wholly different societal interest from the first-degree murder statute, which is intended to protect against homicide. When the Legislature chooses to define an offense in terms of another independently defined offense or set of offenses, it is not expressing the judgment that the defendant should not be multiply punished. The analysis based on lesser included offenses is misplaced in the context of predicate-based offenses because it bears no logical relationship to the legislative intent regarding punishment.

5. The language of the first-degree murder statute does not speak to the issue of multiple punishment. A clear legislative intent to impose multiple punishment is required to overcome what is in effect the rebuttable presumption against multiple punishment contained in the Double Jeopardy Clause, which is a particularized version of the rule of lenity. The rule of lenity means that the Court will not interpret a criminal statute so as to increase the penalty that it places on a defendant when such an interpretation can be based on no more than a guess as to what the Legislature intended. For this reason, and not because

proof of armed robbery was required to establish felony murder, the defendant in this case cannot be subjected to multiple punishment.

6. The guarantee of the Due Process Clause operates differently in cases of multiple prosecution and multiple punishment because different interests are implicated. Thus, the meaning of the "same offense" depends on the context in which the double jeopardy question arises: the cases cited by the Court to support the use of the lesser included offense analysis in this case all arose in the context of multiple prosecutions, a problem not presented here.

82 Mich App 358; 266 NW2d 847 (1978) reversed.

### OPINION OF THE COURT

1. HOMICIDE — FIRST-DEGREE MURDER — STATUTES.

The use of the common-law term "murder" in the first-degree murder statute requires that a murder, as defined at the common law, must first be established before the statute is applied to elevate the degree (MCL 750.316; MSA 28.548).

2. HOMICIDE — FELONY MURDER — MALICE — INSTRUCTIONS TO JURY.

The instructions to the jury in a trial for murder in the perpetration or attempted perpetration of one of the felonies enumerated in the first-degree murder statute must include the element of malice necessary to prove murder because the common-law felony murder doctrine, which supplies the element of malice from the intent to commit the underlying felony, has been abolished in Michigan to the extent that it was in force; the conclusion must be left to the jury to infer from all of the evidence, including the facts and circumstances of the perpetration of the felony (MCL 750.316; MSA 28.548).

3. HOMICIDE — FELONY MURDER — MALICE — INSTRUCTIONS TO JURY.

A conviction of first-degree murder must be reversed where the trial court instructed the jury only that the fact that the killing was in the perpetration of a robbery supplied the elements of premeditation and deliberation, because the instruction assumed that a killing during the commission of an armed robbery constitutes first-degree felony murder and failed to instruct on the element of malice (MCL 750.316; MSA 28.548).

4. HOMICIDE — FELONY MURDER — ARMED ROBBERY — STATUTES — MULTIPLE PUNISHMENT — LEGISLATIVE INTENT.

The first-degree murder statute and the armed robbery statute are devoid of any express or reasonably ascertainable legisla-

tive intent to create more than a single crime or punishment for a murder which is committed in the perpetration or attempted perpetration of armed robbery; to the extent that legislative intent is not entirely free of doubt, the doubt must be resolved in favor of lenity (MCL 750.316, 750.529; MSA 28.548, 28.797).

5. CRIMINAL LAW — DOUBLE JEOPARDY — MULTIPLE PUNISHMENT.

The guarantee against double jeopardy applies as a restraint on imposing multiple punishment for a single criminal act (US Const, Am V; Const 1963, art 1, § 15).

6. CRIMINAL LAW — DOUBLE JEOPARDY — MULTIPLE PUNISHMENT.

Review, as a matter of state law, of a double jeopardy claim based upon multiple punishment imposed for a single criminal act focuses upon the proof necessary to conviction; where the proof adduced at trial indicates that one offense is an included offense of the other, conviction of both offenses is precluded (Const 1963, art 1, § 15).

7. HOMICIDE — FELONY MURDER — ARMED ROBBERY — DOUBLE JEOPARDY — MULTIPLE PUNISHMENT.

Conviction of first-degree murder in the perpetration of armed robbery and of the same armed robbery violates the defendant's state constitutional right against double jeopardy because the underlying felony is a necessary element of murder in the perpetration or attempt to perpetrate the felonies listed in the first-degree murder statute, and, on the facts of such a case, the greater offense of first-degree murder could not have been committed without the armed robbery (Const 1963, art 1, § 15; MCL 750.316, 750.529; MSA 28.548, 28.797).

8. CRIMINAL LAW — DOUBLE JEOPARDY — MULTIPLE PUNISHMENT.

A defendant may be charged and tried for each act that constitutes a separate crime; however, when trial is for an act which includes lesser offenses, if the jury finds guilt of the greater, the defendant may not also be convicted separately of the lesser included offense because the prohibition against multiple punishment for the same crime cannot be avoided by the form of the charge (Const 1963, art 1, § 15).

9. HOMICIDE — FELONY MURDER — MALICE — INTENT.

Proof of the underlying felony is a necessary element to establish first-degree murder in the perpetration or attempted perpetration of a felony, although malice may no longer be supplied by the intent to commit the underlying felony (MCL 750.316; MSA 28.548).

OPINION CONCURRING IN RESULT BY RYAN, J.

10. CRIMINAL LAW — MULTIPLE PUNISHMENT — DOUBLE JEOPARDY.

*A defendant has no recourse under the Double Jeopardy Clause for a claim of multiple punishment imposed for a single criminal act where the punishment imposed, however onerous, is a punishment which the Legislature clearly intended to be imposed (US Const, Am V; Const 1963, art 1, § 15).*

11. CRIMINAL LAW — MULTIPLE PUNISHMENT — DOUBLE JEOPARDY.

*Where multiple sentences are imposed at a single. criminal trial the role of the constitutional guarantee of the Due Process Clause is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishment for the same offense (US Const, Am V; Const 1963, art 1, § 15).*

12. CRIMINAL LAW — MULTIPLE PUNISHMENT — LESSER INCLUDED OFFENSES — STATUTES — LEGISLATIVE INTENT.

*The rule that conviction of both the greater and lesser included offense on proof of a single criminal act is precluded is a rule of statutory construction to be applied only when it is probative of legislative intent; the implicit assumption of the rule is that the Legislature would not intend a person to be convicted of and punished for two or more offenses that lie on a single continuum of culpability because each continuum comprises those offenses that serve to vindicate the same social norm.*

13. CRIMINAL LAW — MULTIPLE PUNISHMENT — STATUTES — LEGISLATIVE INTENT.

*An inference of legislative intent against multiple punishment should not arise where the Legislature defines an offense by reference to another independently defined offense or class of offenses so that proof of the latter is a prerequisite for proof of the former.*

14. CRIMINAL LAW — MULTIPLE PUNISHMENT — DOUBLE JEOPARDY — LEGISLATIVE INTENT.

*A clear legislative intent to impose multiple punishment is required to overcome what is in effect the rebuttable presumption against multiple punishment contained in the Double Jeopardy Clause, a particularized version of the rule of lenity that the Court will not interpret a criminal statute so as to increase the penalty that it places on a defendant when such an interpretation can be based on no more than a guess as to what the Legislature intended (US Const, Am V; Const 1963, art 1, § 15).*

15. HOMICIDE — FELONY MURDER — ARMED ROBBERY — DOUBLE
    JEOPARDY — MULTIPLE PUNISHMENT.

   *A defendant cannot be subjected to multiple punishment for first-*
   *degree murder in the perpetration of armed robbery and for*
   *the same armed robbery because the language of the first-*
   *degree murder statute does not show the clear legislative intent*
   *to impose multiple punishment which is required to overcome*
   *the presumption against multiple punishment contained in the*
   *Double Jeopardy Clause (US Const, Am V; Const 1963, art 1,*
   *§ 15; MCL 750.316, 750.529; MSA 28.548, 28.797).*

16. CRIMINAL LAW — DOUBLE JEOPARDY — MULTIPLE PUNISHMENT —
    MULTIPLE PROSECUTION.

   *The guarantee of the Double Jeopardy Clause operates differently*
   *in cases of multiple prosecution and multiple punishment*
   *because different interests are implicated; thus, the meaning of*
   *the "same offense" depends on the context in which the double*
   *jeopardy question arises (US Const, Am V; Const 1963, art 1,*
   *§ 15).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, and *Michael R. Mueller* and *Larry L. Roberts,* Assistants Prosecuting Attorney, for the people.

*Carl Ziemba* for defendant.

BLAIR MOODY, JR., J. Ronald Tyrone Wilder and codefendant Lee Chester Butts were charged with first-degree murder committed in the perpetration or attempted perpetration of a robbery (first-degree felony murder), MCL 750.316; MSA 28.548,[1] and

[1] The first-degree murder statute provided, before it was amended by 1980 PA 28:

"All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, burglary, larceny of any kind, extortion or kidnapping, shall be murder of the first degree, and shall be punished by solitary confinement at hard labor in the state prison for life." MCL 750.316; MSA 28.548.

armed robbery, MCL 750.529; MSA 28.797.[2] Following a jury trial, defendant Wilder and codefendant Butts were found guilty of both offenses. The court sentenced defendant to life imprisonment for the first-degree felony-murder conviction and 15 to 30 years for the armed robbery conviction.

Defendant appealed to the Court of Appeals on several grounds. A majority of the Court affirmed the conviction of first-degree felony murder. The Court found that no specific instruction on malice was required. Judge RILEY dissented from this portion of the opinion. However, the Court unanimously agreed that defendant's armed robbery conviction must be vacated on the basis that defendant could not properly be convicted of both first-degree felony murder and the underlying felony of armed robbery without violating the prohibition against double jeopardy. 82 Mich App 358; 266 NW2d 847 (1978).

Defendant applied to us, and we granted leave to appeal, on the question whether Michigan recognizes a felony-murder rule permitting malice to be supplied from the intent to commit the felony underlying the murder. The prosecutor filed a cross-appeal, and we granted leave to appeal on the question whether defendant was placed twice in jeopardy by being convicted and sentenced both for first-degree felony murder and the underlying felony of armed robbery.[3] 403 Mich 816 (1978).

[2] The armed robbery statute provides:

"Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years." MCL 750.529; MSA 28.797.

[3] We concurrently granted leave in another case involving the same basic question. *People v Jankowski,* 408 Mich 79; 289 NW2d 674 (1980). The cases were argued consecutively before the Court.

With respect to the first issue, we hold that defendant's conviction of first-degree felony murder must be vacated on the authority of the Court's decision in *People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980). Although the instant case was not argued and submitted together with *Aaron* and its companion cases, leave to appeal was granted on the same day leave was granted in *Aaron,* the question presented was essentially identical to the question in *Aaron* and its companions, and the cases were argued at the same session of this Court. Therefore, we treat this case as a companion to *People v Aaron* for purposes of applying the rule stated therein.

The trial court's first-degree felony-murder instruction erroneously defined the element of malice. Thus, if charged again with first-degree felony murder, defendant must be retried under proper instruction.

# I

The evidence in this case indicated that the victim, Roosevelt Reaves, was killed by a single gunshot wound of the head inflicted by codefendant Butts during a scuffle in the hallway of the victim's apartment building. Defendant and codefendant Butts were apparently bent on obtaining money from the victim when the shooting occurred. A female acquaintance of the victim was present in the apartment when he responded to a ringing of the doorbell. She testified that she saw the victim, the defendant, and codefendant Butts in the apartment hallway. She stated that Butts had a gun and ordered her and the victim to lie on the floor. The victim struggled with the assailants and made his way to the door. At that point, the witness said, she heard a shot and saw the victim

fall. The police arrived shortly afterward. Defendant was arrested four days later.

II

The felony-murder rule has traditionally allowed courts to supply the element of malice in felony-murder prosecutions from the intent to commit the underlying felony.[4] In *People v Aaron,* this Court resolved the status of the felony-murder rule in Michigan jurisprudence. We first determined that Michigan has never enacted a felony-murder statute which incorporated the rule:

"Michigan does not have a statutory felony-murder doctrine which designates as murder any *death* occurring in the course of a felony without regard to whether it was the result of accident, negligence, recklessness or willfulness. Rather, Michigan has a statute which makes a *murder* occurring in the course of one of the enumerated felonies a first-degree murder:

" 'Murder which is perpetrated by means of poison, lying in wait, or other wilful, deliberate, and premeditated killing, or which is committed in the perpetration, or attempt to perpetrate arson, criminal sexual conduct in the first or third degree, robbery, breaking and entering of a dwelling, larceny of any kind, extortion, or kidnapping, is murder of the first degree, and shall be punished by imprisonment for life.' MCL 750.316; MSA 28.548.

\* \* \*

"Thus, we conclude that Michigan has not codified the common-law felony-murder rule. The use of the term 'murder' in the first-degree statute requires that a murder must first be established before the statute is

[4] See generally Moreland, Law of Homicide (Indianapolis: Bobbs-Merrill, 1952), pp 42-50; LaFave & Scott, Criminal Law, § 71, pp 545-561; Perkins, Criminal Law (2d ed), pp 37-45; 1 Anderson, Wharton's Criminal Law and Procedure (1957 ed), § 251, pp 539-543.

applied to elevate the degree." *People v Aaron,* 717-718, 721.

We then decided that in the absence of a statutory felony-murder rule the common law must be consulted. Const 1963, art 3, § 7. Under the direct challenge to the rule, we held that the common-law doctrine should be abolished in Michigan to the extent previously in force:

"Our review of Michigan case law persuades us that we should abolish the rule which defines malice as the intent to commit the underlying felony. Abrogation of the felony-murder rule is not a drastic move in light of the significant restrictions this Court has already imposed. Further, it is a logical extension of our decisions * * *.

"We believe that it is no longer acceptable to equate the intent to commit a felony with the intent to kill, intent to do great bodily harm, or wanton and willful disregard of the likelihood that the natural tendency of a person's behavior is to cause death or great bodily harm. * * * In a charge of felony murder, it is the murder which is the harm which is being punished. A defendant who only intends to commit the felony does not intend to commit the harm that results and may or may not be guilty of perpetrating an act done in wanton or willful disregard of the plain and strong likelihood that such harm will result. Although the circumstances surrounding the commission of the felony may evidence a greater intent beyond the intent to commit the felony, or a wanton and willful act in disregard of the possible consequence of death or serious injury, the intent to commit the felony, of itself, does not connote a 'man-endangering-state-of-mind'. Hence, we do not believe that it constitutes a sufficient *mens rea* to establish the crime of murder.

"Accordingly, we hold today that malice is the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause

death or great bodily harm. We further hold that
malice is an essential element of any murder, as that
term is judicially defined, whether the murder occurs in
the course of a felony or otherwise. The facts and
circumstances involved in the perpetration of a felony
may evidence an intent to kill, an intent to cause great
bodily harm, or a wanton and willful disregard of the
likelihood that the natural tendency of defendant's
behavior is to cause death or great bodily harm; how-
ever, the conclusion must be left to the jury to infer
from all the evidence." *People v Aaron,* 727-729.

What is henceforth required in all first-degree
murder prosecutions in this state is that the trial
court include within its instruction to the jury the
element of malice as defined in *Aaron.* The under-
lying felony itself will no longer per se provide the
element of malice in such prosecutions.

In the instant case, the trial court gave the
following instructions as to murder:

"Now as to the first count in the information, that is
murder first-degree, felony, that means this: was there
a robbery or attempt[ed] robbery, and while the robbery
or the attempt[ed] robbery was going on was Mr. Roose-
velt Reaves killed and murdered?

"Now if the prosecution has shown you that these
two men were acting in concert, that is together, and
that they aided and assisted each other in the perpetra-
tion or the commission of a robbery, or the commission
of attempt[ed] robbery, and Mr. Reaves was killed as a
result of that, they have proven to you beyond a reason-
able doubt that this is first-degree murder, felony. The
felony being the robbery.

"Now I know you have heard of a premeditated
killing. We are not concerned with that in this case,
because the law supplies the premeditation and the
deliberation if a person is killed in the perpetration of a
robbery, or the attempt[ed] perpetration of a robbery.
The prosecution does not have to prove premeditation
and deliberation, it is automatically supplied because

the law says that, if a person is killed in the perpetration or attempt[ed] perpetration of a robbery that is first-degree murder, felony. But you must be satisfied beyond a reasonable doubt that there was a robbery or the attempt[ed] perpetration of a robbery committed by these defendants, not by somebody else. And that's important. The prosecution must prove that they committed that act or attempted to commit that act of robbery and during that Mr. Reaves was killed."

It is apparent that the trial court's instruction violates the dictates of *Aaron*. The trial court assumed that a killing perpetrated during the commission of an armed robbery constitutes first-degree felony murder. This approach is erroneous. Therefore, the decision of the Court of Appeals is reversed.

## III

The instant case presents a second question which is similar to the one resolved in this Court's decision of *People v Jankowski*, 408 Mich 79; 289 NW2d 674 (1980). What we must determine here on similar principles is whether defendant Wilder was deprived of his constitutional right not to be placed twice in jeopardy for the same act when he was convicted and sentenced both for first-degree felony murder and the underlying felony of armed robbery. See US Const, Ams V, XIV; Const 1963, art 1, § 15.[5]

[5] "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." US Const, Am V.

"No person shall be subject for the same offense to be twice put in jeopardy." Const 1963, art 1, § 15.

See generally, Comment, *Statutory Implementation of Double Jeopardy Clauses: New Life For a Moribund Twice In Jeopardy*, 75 Yale LJ 262 (1965); Sigler, *A History of Double Jeopardy*, 7 Am J Legal Hist 283 (1963); Recent Developments, *Criminal Law—Multiple Punishment Under the Crime Control Act—A Need for Reexamination of Wharton's Rule and Double Jeopardy*, 52 Wash L Rev 142 (1976).

We hold that conviction and sentence for both first-degree felony murder and the underlying felony violates the state constitutional prohibition against double jeopardy, as the evidence needed to prove first-degree felony murder requires proof of the underlying lesser included felony.[6]

## A

The guarantee against twice being put in jeopardy under the United States Constitution was first made applicable to the states in the relatively recent case of *Benton v Maryland,* 395 US 784, 794; 89 S Ct 2056; 23 L Ed 2d 707 (1969). At the same time, in an allied case, the Supreme Court enunciated the proper scope of Federal protection:

"The Court has held today, in *Benton v Maryland,* that the Fifth Amendment guarantee against double jeopardy is enforceable against the States through the Fourteenth Amendment. That guarantee has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. *And it*

---

[6] My colleague suggests that there is an analytical distinction between logically included offenses and legislatively determined included offenses. Whether an offense is a logically included or legislatively determined offense, the offense is the "same" offense for double jeopardy purposes under *Blockburger v United States,* 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932). See *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374, 406-407; 280 NW2d 793 (1979) (KAVANAGH, J., dissenting), *app dis sub nom Brintley v Michigan,* 444 US 948; 100 S Ct 418; 62 L Ed 2d 317 (1979). First-degree felony murder requires proof of the underlying felony. See *Whalen v United States,* 445 US 684; 100 S Ct 1432; 63 L Ed 2d 715 (1980). Nor does this suggested approach alter the analysis under our state constitutional prohibition against double jeopardy. The legislatively determined lesser included offense, the underlying felony, is a necessary prerequisite to a first-degree felony-murder conviction and, on the facts of this case, renders them the "same" offense.

*protects against multiple punishments for the same offense." North Carolina v Pearce,* 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969).

In the instant case, we deal with imposition of multiple punishment.[7]

At the outset, we recognize that the statutes with which we deal are devoid of any express or reasonably ascertainable legislative intent to create more than a single crime or punishment. To the extent that legislative intent is not entirely free of doubt, the doubt must be resolved in favor of lenity. See *Whalen v United States,* 445 US 684, 694; 100 S Ct 1432; 63 L Ed 2d 715 (1980); *Simpson v United States,* 435 US 6, 14-15; 98 S Ct 909; 55 L Ed 2d 70 (1978); *United States v Bass,* 404 US 336, 347; 92 S Ct 515; 30 L Ed 2d 488 (1971). We are therefore confronted with a different constitutional concern than that addressed in *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979), *app dis sub nom Brintley v Michigan,* 444 US 948; 100 S Ct 418; 62 L Ed 2d 317 (1979). The question presently before this Court involves "the traditional application of double jeopardy protection as a restraint on courts and prosecutors imposing double punishment for a single criminal act". *People v Jankowski,* 86.

B

In such instances, Michigan has adopted a standard of review which focuses upon the proof of facts necessary to conviction. Where the proof adduced at trial indicates that one offense is a

---

[7] See Schwartz, *Multiple Punishment for the "Same Offense": Michigan Grapples with the Definitional Problem,* 25 Wayne L Rev 825 (1979).

necessarily or cognate lesser included offense[8] of
the other, then conviction of both the offenses will
be precluded.[9] *People v Cook,* 236 Mich 333; 210

[8] See *People v Ora Jones,* 395 Mich 379, 387; 236 NW2d 461 (1975);
4 Anderson, Wharton's Criminal Law and Procedure (1957 ed), § 1799,
pp 631-632.

[9] In some jurisdictions, the same general conclusion has been
reached, though under slightly different legal tests. See, *e.g., Newton
v State,* 280 Md 260; 373 A2d 262 (1977); *State ex rel Wikberg v
Henderson,* 292 So 2d 505 (La, 1974); *State v Thompson,* 280 NC 202;
185 SE2d 666 (1972); *State v Thomas,* 114 NJ Super 360; 276 A2d 391
(1971), *modified* 61 NJ 314; 294 A2d 57 (1972); *Ex Parte Jewel,* 535
SW2d 362 (Tex Crim App, 1976); *Ronzani v State,* 24 Wis 2d 512; 129
NW2d 143 (1964).

Other states have reached the opposite conclusion. See, *e.g., State v
Clayton,* 109 Ariz 587; 514 P2d 720 (1973); *Turner v State,* 248 Ark
367; 452 SW2d 317 (1970), *rev'd on other grounds sub nom Turner v
Arkansas,* 407 US 366; 92 S Ct 2096; 32 L Ed 2d 798 (1972); *Slater v
State,* 316 So 2d 539 (Fla, 1975); *State v Briggs,* 533 SW2d 290 (Tenn,
1976).

In resolving the question before us, some courts have referred to
the doctrine of "merger". See, *e.g., State v Woods,* 286 NC 612; 213
SE2d 214 (1975), *vacated on other grounds sub nom Woods v North
Carolina,* 428 US 903; 96 S Ct 3207; 49 L Ed 2d 1208 (1976); *State v
Hubbard,* 123 NJ Super 345; 303 A2d 87 (1973); *State v Carlson,* 5 Wis
2d 595; 93 NW2d 354 (1958).

At common law, the doctrine of merger was a specialized rule
which applied when the same criminal act was both a felony and a
misdemeanor. In such a case, the misdemeanor merged in the felony
and only the felony was punishable. See 22 CJS, Criminal Law, § 10,
pp 42-46. Michigan has abolished the doctrine of merger by statute.
See MCL 768.4; MSA 28.1027. See also *People v Causley,* 299 Mich
340, 347; 300 NW 111 (1941).

More recently, however, some jurisdictions have adopted the once
specialized common-law merger to a more general application in
double jeopardy analysis. See, *e.g., Chittum v State,* 1 Md App 205,
210-211; 228 A2d 628, 631 (1967); *Lievers v State,* 4 Md App 219, 221;
242 A2d 178, 179 (1968). Under this modern interpretation, the term
"merger" now refers to cases where "one crime necessarily involves
another". *Commonwealth ex rel Moszczynski v Ashe,* 343 Pa 102, 104;
21 A2d 920, 921 (1941), quoted in *Commonwealth v Sparrow,* 471 Pa
490, 504; 370 A2d 712, 719 (1977), *overruled Commonwealth v Tarver,*
493 Pa 320; 426 A2d 569 (1981) (robbery is the same offense as first-
degree felony murder); *State v Honie,* 310 A2d 872, 873 (Del, 1973).
The purpose of this doctrine is to preclude multiple convictions and
punishments. *People v Cassidy,* 40 NY2d 763, 767; 358 NE2d 870, 873;
390 NYS2d 45 (1976); *State v DeSanto,* 157 NJ Super 452, 464; 384
A2d 1169, 1176 (1978).

In Michigan, it is clear that the Court has adopted what is funda-
mentally a similar test. See *People v Cook,* 236 Mich 333, 335-336,

NW 296 (1926); *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976); *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977); *People v Jankowski,* 86.

According to the evidence produced at trial in this matter, the felony of armed robbery was an underlying offense of the murder committed by these defendants. The underlying felony has been found by this Court to be a necessary element of every prosecution for first-degree felony murder:

"We hold that there are lesser included offenses to first-degree felony-murder. Second-degree murder is always a lesser included offense of first-degree murder. First-degree murder is second-degree (common-law) murder *plus* an element, *viz.,* either premeditation or the perpetration or attempt to perpetrate an enumerated felony. *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973)." *People v Carter,* 395 Mich 434, 437-438; 236 NW2d 500 (1975).

Under Michigan authority, the fact that the elements of first-degree felony murder do not in every instance require or include the elements of armed robbery does not mean the offense of armed robbery is not necessarily included in the felony murder here. It is recognized that the underlying felony might be characterized as a cognate lesser included offense, not a necessarily included offense. See *State v Thompson,* 280 NC 202, 215-216; 185 SE2d 666, 675 (1972). Though theoretically arguable, such a position is irrelevant when the legal

338; 210 NW 296 (1926); *People v Martin,* 398 Mich 303, 307-310; 247 NW2d 303 (1976); *People v Stewart (On Rehearing),* 400 Mich 540, 547-549; 256 NW2d 31 (1977); *People v Jankowski,* 86. However, we focus upon the technical concept of necessarily and cognate lesser included offenses and the proof of facts presented at trial. See *People v Ora Jones,* 387. Thus, Michigan employs the same basic concept known as merger in some other jurisdictions; yet we do not denominate the principle as such.

analysis depends not upon the theoretical elements of the offense but upon proof of facts actually adduced. We stated in *People v Jankowski,* 91:

"For purposes of the double jeopardy analysis, as a matter of state constitutional law, the question is not whether the challenged lesser offense is by definition necessarily included within the greater offense also charged, but whether, on the facts of the case at issue, it is."

In this case, proof required to convict of first-degree felony murder necessarily included first proving culpability as to the underlying felony. In this regard, the trial court correctly instructed the jury:

"[Y]ou must be satisfied beyond a reasonable doubt that there was a robbery or the attempt[ed] perpetration of a robbery committed by these defendants, not by somebody else. And that's important. The prosecution must prove that they committed that act or attempted to commit that act of robbery and during that Mr. Reaves was killed."

The fact implicit in the double-jeopardy lesser included offense analysis is that the greater crime of first-degree felony murder cannot have been committed without necessarily committing the underlying felony element of armed robbery. Defendant Wilder and codefendant Butts must necessarily have been found guilty of armed robbery or attempted armed robbery before any conviction of first-degree felony murder could arise incident to the robbery.

Confronted with a similar situation in *People v Martin,* this Court stated:

"A defendant may be charged and tried for each act that constitutes a separate crime. However, when tried for an act which includes lesser offenses, if the jury finds guilt of the greater, the defendant may not also be convicted separately of the lesser included offense. The prohibition against multiple punishment for the same crime cannot be avoided by the form of the charge. 'The form of pleading cannot assume such importance that it will permit defendant to be convicted of both the included and greater offense.' *People v Greer,* 30 Cal 2d 589, 599; 184 P2d 512, 518 (1947). Accord, *United States v Belt,* 516 F2d 873 (CA 8, 1975), *cert den* 423 US 1056; 96 S Ct 790; 46 L Ed 2d 646 (1976).

"The guarantee against double jeopardy protects against not only a second *prosecution* for the same offense, but it also 'protects against multiple punishments for the same offense'. *North Carolina v Pearce,* 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969).

" '[T]he Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it.' *Ex Parte Lange,* 85 US (18 Wall) 163, 173; 21 L Ed 872 (1874).

"Accord, *State v Waldenburg,* 9 Wash App 529; 513 P2d 577 (1973); *Gallinaro v Commonwealth,* 362 Mass 728; 291 NE2d 420 (1973). See also *People v Anderson,* 62 Mich App 475; 233 NW2d 620 (1975), *[remanded* 406 Mich 987 (1979)]." 398 Mich 309-310.

Consequently, defendant's conviction of both first-degree felony murder and the underlying felony of armed robbery constitutes reversible error under existing Michigan authority.

Question may arise as to the effect, if any, of our decision in *People v Aaron* on the analysis of double jeopardy in cases involving first-degree felony murder. In *Aaron,* we have determined that conviction of first-degree felony murder in Michigan requires proof of every element of murder, including malice. Though the trial court did not properly instruct on malice in this case, it did

properly instruct that proof of armed robbery was a necessary element of first-degree felony murder.

Pursuant to *Aaron,* proof of malice is necessary to constitute murder under the first-degree murder statute. However, proof of the underlying felony is also necessary to raise second-degree murder to first-degree murder. Consequently, the felony still remains as a necessary element to the statutory offense and its proof is required for conviction. The double jeopardy analysis is thus left unaffected by the *Aaron* decision.

## C

The decision we reach in this case is fundamentally[10] consistent with existing authority of the

[10] Some confusion may exist over the use of various tests to establish a double jeopardy violation in Federal and state courts. Basically, there are few significant variances between the Federal test and our own. However, some differences do exist and should be noted.

For instance, Michigan has adopted a distinct constitutional position from the Federal courts as pertains to questions of multiple prosecution. See *North Carolina v Pearce,* 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969). In this regard, Michigan has implemented the minority position espoused in Justice Brennan's "same transaction" analysis in *Ashe v Swenson,* 397 US 436, 453-454; 90 S Ct 1189; 25 L Ed 2d 469 (1970) (Brennan, J., concurring). The rule in Michigan as to multiple prosecution is that all crimes arising from the same transaction must be prosecuted in a single proceeding, except under closely circumscribed conditions. See *People v White,* 390 Mich 245; 212 NW2d 222 (1973). The test we employ in this instance is slightly more protective of defendant's double jeopardy right than the collateral estoppel analysis used by a majority of the Federal Court in *Ashe.*

Similarly, the test concerning multiple punishment under our constitution has developed into a broader protective rule than that employed in the Federal courts. Under Federal authority, the Supreme Court established the "required evidence" test enunciated in *Blockburger v United States,* 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932). See also its original expression in *Morey v Commonwealth,* 108 Mass 433 (1871). In *Blockburger,* the Court outlined their test:

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 US 304.

United States Supreme Court. A lesser included offense principle[11] was employed recently to invalidate an Ohio defendant's conviction in successive proceedings for joyriding and auto theft arising from the same criminal incident. *Brown v Ohio,* 432 US 161, 168; 97 S Ct 2221; 53 L Ed 2d 187 (1977).

Further, the Supreme Court confronted essentially the same question we face now in the context of successive prosecution in *Harris v Oklahoma,* 433 US 682; 97 S Ct 2912; 53 L Ed 2d 1054 (1977). The defendant in *Harris* was convicted of felony murder for killing a grocery store clerk during a robbery and then prosecuted for robbery

This approach isolates the elements of the offense as opposed to the actual proof of facts adduced at trial. See *Harris v United States,* 359 US 19, 23; 79 S Ct 560; 3 L Ed 2d 597 (1959); *United States v Kramer,* 289 F2d 909, 913 (CA 2, 1961). Under this test, convictions of two criminal offenses arising from the same act are prohibited only when the greater offense necessarily includes all elements of the lesser offense. Accordingly, conviction of both offenses is precluded only where it is impossible to commit the greater offense without first having committed the lesser offense. From the perspective of lesser included offenses, the Supreme Court in cases concerning double jeopardy has thus adhered to the common-law definition of such offenses. See *People v Ora Jones,* 387.

The Federal test in *Blockburger* can thus be distinguished from this Court's approach in two principal ways. First, we find the proper focus of double jeopardy inquiry in this area to be the proof of facts adduced at trial rather than the theoretical elements of the offense alone. Proof of facts includes the elements of the offense as an object of proof. Yet, the actual evidence presented may also determine the propriety of finding a double jeopardy violation in any particular case. See *People v Martin,* 309; *People v Stewart,* 548; *People v Jankowski,* 91.

Second, we have held that double jeopardy claims under our constitution may prohibit multiple convictions involving cognate as well as necessarily included offenses. *People v Jankowski,* 91.

[11] Use of this principle by the Supreme Court can be traced back to one of the earliest decisions of the Court in this area. *In re Hans Nielsen,* 131 US 176; 9 S Ct 672; 33 L Ed 118 (1889). Relying upon the original test discussed in *Morey,* the Court determined that a prior conviction of unlawful cohabitation precluded a subsequent conviction of adultery because the former offense was an "essential and principal ingredient of adultery" and conviction of the greater offense barred conviction of the lesser included offense.

with firearms. In reversing the subsequent conviction of the lesser included offense, the Court made the following statement:

"When, as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one. *In re Hans Nielsen,* 131 US 176; 9 S Ct 672; 33 L Ed 118 (1889); *cf. Brown v Ohio, supra,* 432 US 161. '[A] person [who] has been tried and convicted for a crime which has various incidents included in it, * * * cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offence.' *In re Nielsen, supra,* 131 US 188. See also *Waller v Florida,* 397 US 387; 90 S Ct 1184; 25 L Ed 2d 435 (1970); *Grafton v United States,* 206 US 333, 352; 27 S Ct 749; 51 L Ed 1084 (1907)." *Harris v Oklahoma,* 682-683.

We recognize that *In re Hans Nielsen, Brown,* and *Harris* involved successive prosecutions. Nevertheless, the underlying logic and analysis which focuses upon lesser included offense principles is a valuable tool in determining whether there has been multiple punishment, *i.e.,* whether two offenses are the "same" offense, in a particular case. If a defendant should not be required to defend against successive prosecutions for the "same" offense, and thereby not suffer double punishment, neither should he be subjected to multiple punishment at a single trial for the "same" offense.[12]

[12] In a recent multiple prosecution case the Pennsylvania Supreme Court held that aggravated robbery is a lesser included offense of first-degree felony murder. An earlier decision involving convictions for both murder and robbery at a single trial holding that robbery was a separate offense for double jeopardy purposes was expressly overruled. *Commonwealth v Tarver,* fn 9 *supra.* For a discussion of the similarity between the first-degree murder statutes of Michigan and Pennsylvania, see *People v Aaron,* 409 Mich 672, 718; 299 NW2d 304 (1980).

Most recently, the Supreme Court has confronted the felony-murder double jeopardy problem within the framework of multiple punishment in the same prosecution. *Whalen v United States, supra.* Whalen was convicted in the District of Columbia of rape and of killing the same victim in the perpetration of rape. He was sentenced consecutively to terms of imprisonment of 20 years to life for first-degree murder and 15 years to life for rape. The District of Columbia Court of Appeals affirmed. 379 A2d 1152 (DC App, 1977).

The Supreme Court reversed the Court of Appeals primarily on grounds that, within the context of the District of Columbia Code, Congress had not authorized consecutive sentences both for felony murder and the underlying offense of rape. *Whalen v United States,* 445 US 684, 690.[13]

In addition, as an interrelated basis of decision, the Court addressed the double jeopardy implications in *Whalen* by applying a provision of the District of Columbia Code which embodied the double jeopardy rule earlier enunciated in *Blockburger v United States,* 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932). The *Whalen* Court concluded that the law did not authorize consecutive sentences for both felony murder and the underlying felony of rape since it was not the case that each provision requires proof of a fact which the other did not. *Blockburger v United States,* 304. To the contrary, conviction of felony murder required proof of all the elements of the offense of rape. See

---

[13] The Supreme Court recently applied the *Blockburger* rule in a case involving a single prosecution and conviction of both conspiracy to import marijuana and conspiracy to distribute marijuana. *Albernaz v United States,* 450 US 333; 101 S Ct 1137; 67 L Ed 2d 275 (1981). These two offenses are different offenses, not the "same" offense— each requires proof of a fact that the other does not. *Albernaz,* 345 (Stewart, J., concurring). This is not the situation in the instant case, nor in *Whalen v United States,* fn 6 *supra.*

*United States v Greene,* 160 US App DC 21, 34; 489 F2d 1145, 1158 (1973). *Cf. Harris v Oklahoma,* 682-683.

As the two offenses were determined to be basically the "same" offense for purposes of double jeopardy, the Court found the multiple punishment impermissible. Any ambiguity in congressional intent concerning the necessary elements of proof under the particular facts was resolved in favor of lenity. See *Simpson v United States,* 14-15.

## IV

Thus, we find a constitutional basis to prohibit conviction of both first-degree felony murder and the underlying necessarily included felony of armed robbery in this case. Conviction of both first-degree felony murder and the underlying felony violates defendant's state constitutional right against double jeopardy.

The trial court's first-degree felony-murder instruction failed to include a proper instruction on the element of malice. We therefore reverse the decision of the Court of Appeals and vacate defendant's first-degree felony-murder conviction.

In this context, the improper instructions relating to the felony-murder charge cast no doubt upon the validity of the armed robbery conviction. As the conviction of the greater offense of first-degree felony murder is vacated, it is no longer a double jeopardy violation to allow the conviction of the lesser offense, armed robbery, to stand.

Accordingly, we reinstate the conviction of the lesser offense of armed robbery and remand to the trial court. If the prosecuting attorney is persuaded that the ends of justice would be better

served by retrial for first-degree felony murder, he may so advise the trial court and the conviction of armed robbery shall also be vacated and a new trial on both charges may be conducted in conformity with this opinion. See *People v Martin,* 398 Mich 303, 307, 313-314; 247 NW2d 303 (1976).

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, and FITZGERALD, JJ., concurred with BLAIR MOODY, JR., J.

RYAN, J. *(concurring in the result).* Defendant, Ronald Tyrone Wilder, was convicted by a jury of first-degree (felony) murder, MCL 750.316; MSA 28.548, and armed robbery, MCL 750.529; MSA 28.797.

The Court of Appeals affirmed defendant's conviction of murder but vacated his conviction of armed robbery on double jeopardy grounds.[1]

I

This case presents two questions of importance to the criminal jurisprudence of Michigan. The first is whether, in the words of our first-degree murder statute, MCL 750.316; MSA 28.548, "murder * * * committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, burglary, larceny of any kind, extortion or kidnapping"[2] requires a *mens rea* apart from the intent to commit one of the enumerated offenses. We answered this question in the affirmative in *People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980),

---

[1] *People v Wilder,* 82 Mich App 358; 266 NW2d 847 (1978).

[2] The first-degree murder statute was amended by 1980 PA 28. The portion of the statute quoted now reads, "[m]urder * * * committed in the perpetration, or attempt to perpetrate arson, criminal sexual conduct in the first or third degree, robbery, breaking and entering of a dwelling, larceny of any kind, extortion, or kidnapping".

however, and we need not consider it further. The holding of *Aaron*[3] controls defendant's challenge to the instructions on first-degree (felony) murder given in this case.[4] The instructions clearly failed to satisfy the requirements of *Aaron*. Defendant's conviction of first-degree (felony) murder must therefore be reversed.

## II

The second question, which will arise if the prosecutor chooses to retry defendant for murder, is whether the constitutional guarantee against double jeopardy, US Const, Ams V, XIV; Const 1963, art 1, § 15, prohibits conviction of both first-

[3] "[W]e hold today that malice is the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm. We further hold that malice is an essential element of any murder, as that term is judicially defined, whether the murder occurs in the course of a felony or otherwise." *People v Aaron, supra,* 728.

[4] "Now as to the first count in the information, that is murder first-degree, felony, that means this: was there a robbery or attempt[ed] robbery, and while the robbery or the attempt[ed] robbery was going on was Mr. Roosevelt Reaves killed and murdered?

"Now if the prosecution has shown you that these two men were acting in concert, that is together, and that they aided and assisted each other in the perpetration or the commission of a robbery, or the commission of attempt[ed] robbery, and Mr. Reaves was killed as a result of that, they have proven to you beyond a reasonable doubt that this is first-degree murder, felony. The felony being the robbery.

"Now I know you have heard of a premeditated killing. We are not concerned with that in this case, because the law supplies the premeditation and the deliberation if a person is killed in the perpetration of a robbery, or the attempt[ed] perpetration of a robbery. The prosecution does not have to prove premeditation and deliberation, it is automatically supplied because the law says that, if a person is killed in the perpetration or attempt[ed] perpetration of a robbery that is first-degree murder, felony. But you must be satisfied beyond a reasonable doubt that there was a robbery or the attempt[ed] perpetration of a robbery committed by these defendants, not by somebody else. And that's important. The prosecution must prove that they committed that act or attempted to commit that act of robbery and during that Mr. Reaves was killed."

degree (felony) murder and the underlying felony. I agree with the majority that convictions of both offenses cannot stand together, but I disagree with their reasoning and thus feel compelled to express my own views on an important and frequently contested area of constitutional law.

## A

It is important at the outset to observe that the constitutional injunction against being "twice put in jeopardy" comprises three separate protections, each meant to safeguard different interests.[5] In a now oft-quoted passage, the United States Supreme Court explained:

"The Court has held today, in *Benton v Maryland* [395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969)], that the Fifth Amendment guarantee against double jeopardy is enforceable against the States through the Fourteenth Amendment. That guarantee has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v Pearce,* 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969).

The first two protections pertain to the issue of multiple prosecution. The double jeopardy question in this case, however, concerns only the third protection, the protection against multiple punishment.

---

[5] See Westen, *The Three Faces of Double Jeopardy: Reflections on Government Appeals of Criminal Sentences,* 78 Mich L Rev 1001 (1980); Westen & Drubel, *Toward a General Theory of Double Jeopardy,* 1978 Sup Ct Rev 81; Note, *Twice in Jeopardy,* 75 Yale LJ 262 (1965).

B

The jurisprudence of the Double Jeopardy Clause has been described as "a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator".[6] Nonetheless, a "polestar"[7] has emerged to guide courts faced with the question of multiple punishment: legislative intent controls.[8] That is, if the punishment imposed on a defendant, however onerous, is punishment the Legislature clearly intended to be imposed, the defendant has no recourse under the Double Jeopardy Clause.[9]

This principle was implicit in our two most recent cases on the subject, *People v Jankowski,* 408 Mich 79; 289 NW2d 674 (1980), and *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979), *app dis sub nom Brintley v Michigan,* 444 US 948; 100 S Ct 418; 62 L Ed 2d 317 (1979). In *Jankowski* we said:

"We note at the outset that the defendant's double jeopardy challenge is not addressed to a legislative scheme of criminal punishment where a clear legislative intent to create more than a single crime exists." *Jankowski, supra,* 85.

---

[6] *Albernaz v United States,* 450 US 333, 343; 101 S Ct 1137; 67 L Ed 2d 275 (1981).

[7] *Whalen v United States,* 445 US 684, 712; 100 S Ct 1432; 63 L Ed 2d 715 (1980) (Rehnquist, J., dissenting).

[8] *Albernaz v United States, supra,* 344; see *Whalen v United States, supra,* 688-689; *Brown v Ohio,* 432 US 161, 165; 97 S Ct 2221; 53 L Ed 2d 187 (1977); *People v Jankowski,* 408 Mich 79, 85; 289 NW2d 674 (1980); *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374, 392, 402; 280 NW2d 793 (1979), *app dis sub nom Brintley v Michigan,* 444 US 948; 100 S Ct 418; 62 L Ed 2d 317 (1979).

[9] Restrictions of a substantive nature on the Legislature's prerogative to define offenses and fix punishments are contained elsewhere. See US Const, Ams VIII, XIV; Const 1963, art 1, §§ 16-17; *Whalen v United States, supra,* 689, fn 3; *People v Gary Hughes,* 85 Mich App 674, 685, fn 5; 272 NW2d 567 (1978) (opinion of BRONSON, J.).

In *Wayne County Prosecutor,* we chose to disregard a line of authority that used a lesser included offense approach to resolve questions of multiple punishment.[10] We found the authority

"inapposite because the Legislature ha[d] clearly expressed in the felony-firearm statute an intent to authorize multiple convictions and cumulative punishments." *Wayne County Prosecutor, supra,* 402.

The implicit holding of *Jankowski* and *Wayne County Prosecutor* that legislative intent, and not the lesser included offense test, governs the question of double jeopardy in the context of multiple punishment has been confirmed by the most recent rulings of the United States Supreme Court. In *Whalen v United States,* 445 US 684; 100 S Ct 1432; 63 L Ed 2d 715 (1980), the Court was asked to decide whether the Double Jeopardy Clause forbade the imposition of consecutive sentences for felony murder and the underlying felony. In a passage relevant to this case, the Court said:

"In the present case * * * if Congress has not authorized cumulative punishments for rape and for an unintentional killing committed in the course of the rape * * * the petitioner has been impermissibly sentenced. The dispositive question, therefore, is whether Congress did so provide." *Id.,* 688-689.

Even more explicit is the following passage from *Albernaz v United States,* 450 US 333; 101 S Ct 1137; 67 L Ed 2d 275 (1981):

"[T]he 'power to define criminal offenses and to pre-

---

[10] *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977); *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976); *People v Cook,* 236 Mich 333; 210 NW 296 (1926). The same approach was used in *People v Jankowski, supra.*

scribe punishments to be imposed upon those found guilty of them, resides wholly with the Congress.' [*Whalen v United States*, 445 US 684, 689; 100 S Ct 1432; 63 L Ed 2d 715 (1980).] As we previously noted in *Brown v Ohio* [432 US 161; 97 S Ct 2221; 53 L Ed 2d 187 (1977),] 'where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.' 432 US at 165. Thus, *the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed.* Where Congress intended, as it did here, to impose multiple punishment, imposition of such sentences does not violate the Constitution." *Id.,* 344 (emphasis added).


## C

To decide multiple punishment double jeopardy questions this Court has, as a general rule, applied a lesser included offense analysis.[11] This was the case in *People v Jankowski, supra,* where we remarked,

"Because the prohibition embodied in the double jeopardy clause prevents multiple punishment for the same offense, this Court has repeatedly stated that a defendant may not be convicted of both the greater and lesser included offenses." 408 Mich 79, 90-91.

The lesser included offense test is a derivative of the *Blockburger* rule, which states:

"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of

[11] See cases cited in fn 10 *supra.*

a fact which the other does not." *Blockburger v United States,* 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932).[12]

In the context of multiple punishment, the United States Supreme Court has unambiguously expressed the view that the *Blockburger* test is not a constitutional rule but merely a rule of statutory construction:

"The *Blockburger* test is a 'rule of statutory construction', and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent." *Albernaz v United States, supra,* 340. Accord, *Whalen v United States, supra,* 691-692.

This is simply a corollary of the principle that legislative intent is the decisive criterion in multiple punishment cases.

For the same reason our lesser included offense test should be considered a rule of statutory construction to be applied only when it is probative of legislative intent.[13] In this case, it is not.

## D

Defendant was convicted of first-degree (felony) murder and armed robbery. The former offense is defined by reference to the latter offense (or, more

[12] Our test differs from the federal rule by looking to the evidence presented at trial rather than the statutory elements of the offenses in the abstract. As we held in *People v Jankowski, supra:*

"For purposes of the double jeopardy analysis, as a matter of state constitutional law, the question is not whether the challenged lesser offense is by definition necessarily included within the greater offense also charged, but whether, on the facts of the case at issue, it is." 408 Mich 79, 91.

[13] See *Whalen v United States, supra,* 712 (Rehnquist, J., dissenting) ("If the polestar in this case is to be legislative intent, I see no reason to apply *Blockburger* unless it advances that inquiry.").

precisely, to a class of offenses that includes the latter offense), and therefore proof of the latter is a prerequisite for proof of the former. In this regard the latter offense is a predicate for the former, which may be thought of as a predicate-based offense.[14]

The point that needs to be made is this: that a predicate-based offense requires proof of a predicate offense does not mean that the two offenses are greater and lesser included offenses in the traditional sense. "[T]he concept of included offenses reflects a continuum of culpability."[15] Offenses lie on the same continuum, and are therefore greater and lesser included offenses, when "the elements shared by the two offenses coincide in the harm to the societal interest to be protected". *People v Ora Jones*, 395 Mich 379, 390; 236 NW2d 461 (1975). These offenses then are tied together by logic. In contrast, predicate-based offenses and their predicates are tied together by the Legislature.[16]

In our cases that have used the lesser included offense test,[17] the implicit assumption has been that, for committing a single criminal act, the Legislature did not intend a person to be convicted of and punished for two or more offenses lying on a single continuum of culpability. This is because each continuum comprises those offenses that

[14] Other examples of predicate-based offenses include felony-firearm, MCL 750.227b; MSA 28.424(2), and first- and second-degree criminal sexual conduct, MCL 750.520b(1)(c); MSA 28.788(2)(1)(c) (first degree); MCL 750.520c(1)(c); MSA 28.788(3)(1)(c) (second degree).

[15] Note, *Consecutive Sentences in Single Prosecutions: Judicial Multiplication of Statutory Penalties*, 67 Yale LJ 916, 925 (1958) (hereinafter cited as *Consecutive Sentences*).

[16] For a recognition of the distinction between a " 'logically' included offense" and a " 'legislatively determined' included offense", see *Wayne County Prosecutor v Recorder's Court Judge, supra*, 406-407 (KAVANAGH, J., dissenting).

[17] See cases cited in fn 10 *supra*.

serve to vindicate the same social norm.[18] Thus, if one commits a criminal act that violates a single social norm, conviction of and punishment for a single offense would seem to vindicate the interests infringed by that act.

The same assumption cannot be made when the Legislature defines an offense by reference to another offense or class of offenses. As illustrated by our first-degree murder statute, predicate offenses need not be on the same logical continuum of culpability as the predicate-based offense:

"[I]t strains credulity to hold that the underlying felony merges into the felony murder. The statute proscribing the underlying felony—robbery, for example—is designed to protect a wholly different societal interest from the felony murder statute, which is intended to protect against homicide." *United States v Greene,* 160 US App DC 21, 44; 489 F2d 1145, 1168 (1973) (Bazelon, C.J., dissenting).

Consequently, an inference of a legislative intent against multiple punishment should not arise from the fact that the predicate-based offense requires proof of a predicate offense.

Our Court of Appeals has, on at least two occasions, analyzed a predicate-based offense statute and discerned a legislative intent to prescribe multiple punishment, although the reasoning underlying the findings is not clear. In *People v*

[18] "Vindication of a single social norm should, consistent with the concept of lesser included offenses * * *, be suggestive of an intent not to allow cumulative punishment." *Consecutive Sentences,* fn 15 *supra,* 929-930 (footnotes omitted).
And, as another writer put it,
"If several statutes are not only usually violated together but also seem designed to protect the same social interest, the inference becomes very strong that the function of the multiple statutes is only to allow alternative means of prosecution." *Twice in Jeopardy,* fn 5 *supra,* 319.

*Densmore,* 87 Mich App 434; 274 NW2d 811 (1978), the Court considered the first-degree murder statute, see fn 2, *supra,* and accompanying text, and concluded,

"Since the Legislature has seen fit to clearly enumerate the exclusive felonies which can underlie a felony-murder conviction, it would not comport with the legislative intent if we were to adopt defendant's theory of merger." *Id.,* 440.

In *People v Robideau,* 94 Mich App 663; 289 NW2d 846 (1980), the defendant brought a double jeopardy challenge against his convictions of armed robbery and first-degree criminal sexual conduct. The latter conviction was obtained under the section of the statute that reads,

"A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if

\* \* \*

"[s]exual penetration occurs under circumstances involving the commission of any other felony." MCL 750.520b(1)(c); MSA 28.788(2)(1)(c).

(The predicate offense was, of course, armed robbery.) The Court rejected the challenge and, referring to the statutory language just quoted, said:

"Nor is there any constitutional infirmity under the standard in *People v Martin* [398 Mich 303; 247 NW2d 303 (1976)] and *People v Stewart [(On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977)]. As explicated in *Wayne Prosecutor, supra,* 399-402, the evil sought to be prevented in those cases was multiple convictions and cumulative punishments based on only one occurrence when the statutes involved failed to evidence a clear legislative intent to authorize the same. Such is not the

case here. *We find a clear expression of a legislative intent to authorize multiple convictions and cumulative punishments in the language of MCL 750.520b,* just as the Court in *Wayne Prosecutor, supra,* 402, found similar legislative intent expressed in the felony-firearm statute." 94 Mich App 663, 670-671 (emphasis added).

Although I would not go so far as to say that either the first-degree murder statute or the first-degree criminal sexual conduct statute manifests "a *clear* expression of a legislative intent to authorize multiple convictions and cumulative punishments", the statements made in *Densmore* and *Robideau* do recognize that the relationship between a predicate-based offense and a predicate offense is different from the relationship between traditionally recognized greater and lesser included offenses. Moreover, the unarticulated premise of those decisions, with which I agree, is the determination that when the Legislature chooses to define an offense in terms of another independently defined offense or set of offenses, it is not expressing the judgment that the defendant should not be multiply punished.

Put differently, lesser included offense analysis is misplaced in the context of predicate-based offenses because it bears no logical relationship to legislative intent regarding punishment.[19] Hence the lessons of the line of authority represented by

---

[19] In a dissenting opinion in *Whalen v United States, supra,* Justice Rehnquist examined the nature of the difference between "greater and lesser offenses in the traditional sense" on one hand and " 'compound' ["predicate-based" in my idiom] and 'predicate' offenses" on the other. 445 US 684, 708-709. After considering the application of the *Blockburger* test to a compound offense and its various predicate offenses, he concluded:

"[W]hen applied to compound and predicate offenses, the *Blockburger* test has nothing whatsoever to do with legislative intent, turning instead on arbitrary assumptions and syntactical subtleties. * * * If the polestar in this case is to be legislative intent, I see no reason to apply *Blockburger* unless it advances that inquiry." *Id.,* 712.

*People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977),[20] are not instructive here.

E

There still remains the question whether the Legislature intended that a person be convicted of and punished for both first-degree (felony) murder and the underlying felony. The language of the first-degree murder statute does not speak to the issue of multiple punishment.[21] As noted above, however, a first-degree (felony) murder transaction involves violations of distinct social norms: the norm against homicide and the norm against the harm proscribed by the underlying felony. This raises an inference, at least, that the Legislature intended to impose multiple punishment.

However, this is not enough to conclude that "a clear legislative intent"[22] to impose multiple punishment exists, and a clear legislative intent is required to overcome what is in effect the rebuttable presumption against multiple punishment contained in the Double Jeopardy Clause,[23] which works as a particularized version of the rule of lenity:

"This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as

[20] See fn 10 *supra.*

[21] But see *People v Densmore, supra,* 440. Compare MCL 750.227b; MSA 28.424(2) (felony-firearm statute), construed in *Wayne County Prosecutor v Recorder's Court Judge, supra.*

[22] *People v Jankowski, supra,* 85.

[23] See *Westen,* fn 5 *supra,* 1026-1030; *Twice in Jeopardy,* fn 5 *supra,* 313-317.

to what Congress intended." *Ladner v United States,*
358 US 169, 178; 79 S Ct 209; 3 L Ed 2d 199 (1958),
quoted in *Whalen v United States, supra,* 695, fn 10.

For this reason, and not because proof of armed
robbery was required to establish first-degree (fel-
ony) murder in this case, defendant cannot be
subjected to multiple punishment.

### F

Finally, I wish to express my disagreement with
the majority's position that *Brown v Ohio,* 432 US
161; 97 S Ct 2221; 53 L Ed 2d 187 (1977); *Harris v
Oklahoma,* 433 US 682; 97 S Ct 2912; 53 L Ed 2d
1054 (1977), and *In re Hans Nielsen,* 131 US 176; 9
S Ct 672; 33 L Ed 118 (1889), support the use of
lesser included offense analysis in this case. Al-
though each of these cases used that analysis, all
three arose in the context of multiple prosecutions.
Not one addressed the question of multiple punish-
ment at a single trial. The guarantee against
double jeopardy operates differently in the areas of
multiple prosecution and multiple punishment be-
cause different interests are implicated.[24] Thus, the
meaning of "same offense" depends on the context
in which the double jeopardy question arises;[25] the
cases cited by the majority speak to a problem not
presented here.

[24] See authorities cited in fn 5 *supra.*

[25] See *Whalen v United States, supra,* 698-699 (Blackmun, J., con-
curring); 700-701 (Rehnquist, J., dissenting); *Brown v Ohio, supra,* 166,
fn 6; 170 (Brennan, J., concurring); Westen, fn 5 *supra,* 1002-1004 and
fns 8-9, 11-12; Westen & Drubel, fn 5 *supra;* 121-122, fn 188; 156-163,
fn 346; *Twice in Jeopardy,* fn 5 *supra,* 267 and fn 19; 272, fn 50; 275,
fn 59; 301-302. Compare *People v White,* 390 Mich 245; 212 NW2d 222
(1973) (same transaction test for multiple prosecution), with *People v
Jankowski, supra* (lesser included offense test for multiple punish-
ment).