**Merlin E. HIMLE, Respondent,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**
**Appellant.**

**No. C1–89–620.**

Court of Appeals of Minnesota.

Sept. 19, 1989.

Review Denied Nov. 22, 1989.

W. Scott Herzog, Laura J. McKnight, Moss & Barnett, Minneapolis, for respondent.

Linc S. Deter, Felhaber, Larson, Fenlon & Vogt, St. Paul, for appellant.

Heard, considered and decided by HUSPENI, P.J., and NORTON and LOMMEN,* JJ.

## OPINION

A. PAUL LOMMEN, Judge.

Respondent brought an action for declaratory judgment to determine existence of automobile insurance coverage for an accident which occurred while respondent was helping the insured load a horse into respondent's horse trailer. The trial court denied the insurer's motion for summary judgment and granted judgment for respondent. The insurance company appeals. We reverse.

## FACTS

On March 12, 1987, respondent Merlin Himle drove his car and attached horse trailer to Emery Sumption's farm in order to pick up a horse he was buying. The horse was untrained and had never been in a trailer before. In order to load the horse, Sumption attached a line to the horse's halter and then ran the line through a ring at the front of the left stall in the trailer.

Sumption got back out of the trailer and began pulling on the line. The horse put his front feet into the stall, but then balked. The two men linked arms around the horse's hindquarters and attempted to push the horse into the trailer, but the horse reared up, backed out of the trailer and swung around, pinning Sumption to the side of the trailer. Himle walked behind the horse and trailer to assist Sumption, but when Sumption let go of the rope, the horse bolted for the barn and ran over Himle, knocking him to the ground and crushing his leg.

Both Himle and Sumption have automobile insurance policies with appellant American Family Mutual Insurance. Sumption also had premises liability coverage with North Star Mutual Insurance Company. Himle claimed benefits under his own auto

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

policy, but the claim was denied because the policy excluded bodily injury "to anyone if due to unloading any motor vehicle, unless the injuries occur while such person is occupying the motor vehicle."

Himle next served Sumption with a summons and complaint, alleging negligence on Sumption's part. Sumption delivered copies of the complaint to his two insurance agencies, however neither company undertook to defend Sumption. Since no answer was filed within the requisite 20 days, Sumption was in default. On April 26, 1988 Himle and Sumption entered into an agreement whereby Sumption consented to entry of the default judgment as long as satisfaction of the debt was taken only from Sumption's applicable insurance policies.

Himle sought a declaratory judgment from the court on the coverage issue. Both insurers denied coverage. After the default judgment was entered against Sumption in September 1988, the two insurers brought motions for summary judgment in the declaratory judgment action. The court denied the motions, and, instead, entered summary judgment for Himle. Although North Star settled with Himle, American Family appeals from the judgment.

## ISSUE

Did Himle's injuries arise out of the "maintenance or use" of a motor vehicle so as to afford liability coverage under Sumption's auto insurance policy?

## ANALYSIS

On appeal from summary judgment it is the function of the reviewing court to determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). The parties agree the facts of the case are undisputed. Therefore, the only matter before the court is whether the trial court erred in its application of the law. Upon review this court must take a view of the evidence most favorable to the one against whom the

motion was granted. *Abdallah, Inc. v. Martin*, 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954).

Respondent Merlin Himle was denied first party, no-fault benefits under his own auto insurance policy with appellant American Family Insurance. According to American Family's casualty claims analyst:

Mr. Himle and Mr. Emery Su[m]ption were in the process of loading a horse into a horse trailer. Our auto policy excludes Bodily Injury "to anyone if due to unloading any motor vehicle, unless the injur[y] occurs while such person is occupying the motor vehicle." This exclusion is found under the Personal Injury Protection Coverage within our policy.

The exclusionary language corresponds to the statutes that govern insurance policies and provide "benefits for injuries arising out of the maintenance or use of a motor vehicle." Minn.Stat. § 65B.49, subd. 1 (1986). The statutory definition of "maintenance or use of a motor vehicle" is

maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it. Maintenance or use of a motor vehicle does not include (1) conduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles unless the conduct occurs off the business premises, or (2) conduct in the course of loading and unloading the vehicle unless the conduct occurs while occupying, entering into or alighting from it.

Minn.Stat. § 65B.43, subd. 3 (1986).

Respondent argues that while he is precluded from receiving basic economic loss benefits under his own policy, he is eligible for residual liability benefits under Sumption's auto policy. Sumption's liability policy reads:

We will pay damages an insured person is legally liable for because of bodily injury and property damage due to the use of a car or utility trailer.

The statute is similar:

Under residual liability insurance the reparation obligor shall be liable to pay,

on behalf of the insured, sums which the insured is legally obligated to pay as damages because of bodily injury and property damage arising out of the ownership, maintenance or use of a motor vehicle if the injury or damage occurs within this state, the United States of America, its territories or possessions, or Canada.

Minn.Stat. § 65B.49, subd. 3(2) (1986). Respondent argues that the "use" language in Sumption's insurance policy is broader than the "ownership, maintenance or use" language of the statute, and that the policy language does not exclude loading and unloading accidents, as does the statutory definition.

The trial court agreed with respondent. Referring to *Cairns v. Grinnell Mutual Reinsurance Co.*, 398 N.W.2d 821 (Iowa 1987), the court said:

It is incumbent on an insurer to define clearly and explicitly any limitations or exclusions to coverage expressed by broad promises. [Citation omitted.]

\* \* \* \* \* \*

American Family's automobile liability policies provide coverage for the injuries to Mr. Himle since there is no specific policy exclusion to coverage, the vehicle was clearly being used for transportation purposes when the accident occurred, and the vehicle was an active accessory, rather than the mere situs, of Mr. Himle's injuries.

Although we agree with the trial court that the trailer was being used for transportation purposes when the accident occurred, we disagree with the court's conclusion finding that Sumption's liability policy does not exclude coverage of loading or unloading accidents unless the accident occurs while the injured party is occupying, entering into or alighting from the motor vehicle.

*Statutory Construction*

"[W]hether or not a statutory provision is incorporated into an insurance policy depends on the intent of the legislature as ascertained from the language of the statute or applicable public policy." *Milbank Mutual Insurance Co. v. Dairyland In-*

*surance Co.*, 373 N.W.2d 888, 891 (N.D. 1985). "A liability policy which expressly states that it was issued to meet a statute requiring motor vehicle liability insurance must be construed in connection with that statute and the public policy embodied therein, and principles applicable to cases involving ordinary policies are not controlling." *See* 7 Am.Jur.2d, *Automobile Insurance*, § 28 (1980).

The Minnesota No–Fault Automobile Insurance Act mandates three kinds of coverage: basic economic loss (no-fault), liability and uninsured motorist. Minn.Stat. § 65B.49 (1986). The definitions of terms used in the Act, including the definition of "maintenance or use of a motor vehicle" apply to "sections 65B.41 to 65B.71," which sections include all three types of coverage. Minn.Stat. § 65B.43. Sumption's auto liability policy states:

When we certify this policy as proof under any financial responsibility law, it will comply with the law to the extent of the required coverage.

This appears to be an express statement of American Family's intent to meet the requirements of the statutes.

■ There is no support for respondent's contention that the language of a liability policy should be construed more broadly than the language of a no-fault policy. While the applicability of a loading/unloading clause may expand or contract according to whether the clause is inclusionary or exclusionary, *see* Annot., 6 A.L.R.4th 686, 692 (1981), the statutory definition of "maintenance or use of a motor vehicle," with the loading/unloading exclusion, applies to all auto insurance policies issued pursuant to Minn.Stat. Ch. 65B.

*Use of Motor Vehicle for Transportation Purposes*

"[Minnesota courts] have long recognized that under auto insurance law there must be some connection between the injury and the use of the motor vehicle for transportation purposes." *Tlougan v. Auto–Owners Insurance Co.*, 310 N.W.2d 116, 117 (Minn.1981). The causal connection between use and injury is "something

less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury." *Id.* The injury must be a natural and reasonable incident or consequence of the use of the vehicle, or, as the Mississippi Supreme Court characterized it, the vehicle itself must be an "active accessory" to the injury sustained. *Id.* (citations omitted).

Respondent argues that the use of a horse trailer logically includes the loading and unloading of the trailer, and that, in fact, loading horses into a horse trailer is essential to the use of that vehicle for transportation purposes.

 Certainly an accident which occurs in the process of loading a horse into a horse trailer provides a "causal connection" between the vehicle and the injury. *See Haagenson v. National Farmers Union Property and Casualty Co.,* 277 N.W.2d 648 (Minn.1979) (coverage allowed where positioning of vehicle in ditch next to downed power lines created a hazardous situation for a passenger walking toward the car, intending to use the vehicle for transportation purposes); *Progressive Casualty Insurance Co. v. Hoekman,* 359 N.W.2d 685 (Minn.Ct.App.1984) (court found salesman's vehicle was "contributing, indeed necessary," cause of customer's injury after salesman's car collided with customer's garage door, and in subsequent effort to fix the door customer was injured). However, we do not find this connection a sufficient "consequence of the use of the vehicle" to allow respondent coverage under Sumption's liability policy. *See Tlougan,* 310 N.W.2d at 117.

According to the supreme court in *Krupenny v. West Bend Mutual Insurance Co.,* a person injured in the course of loading or unloading a motor vehicle is not entitled to *no-fault* benefits unless the injury occurs while the person is occupying, entering or alighting from a motor vehicle. 310 N.W.2d 133, 135 (Minn.1981). Respondent concedes he never entered the horse trailer. Although Sumption did enter the trailer to string up the lead rope, he alighted from the trailer before the two men began pulling and pushing the horse into the trailer. Thus, the accident did not occur *while* either respondent or Sumption were "occupying" the trailer.

Because the definition of "maintenance or use of a motor vehicle" (with its loading/unloading exclusion and its occupancy exception to that exclusion) applies to all insurance policies governed by the Minnesota No–Fault Automobile Insurance Act, and because respondent clearly did not occupy the trailer when the accident occurred, respondent's claim for liability coverage cannot be approved, for the motor vehicle was not being "used" as required by *Tlougan, Krupenny* or the statutes.

### The Risks of Motoring

As a final note, according to *Krupenny,* the loading and unloading clause of the Minnesota No–Fault Act is "consistent with the philosophy of [the] Act, to compensate losses resulting directly from motoring accidents and to leave to other forms of insurance and compensation systems those losses which are tangential to motorists. *Id.* at 135. Even if Sumption's brief physical contact with the trailer satisfied the occupancy requirement or if the loading/unloading exclusion were found inapplicable to accidents involving the loading of a horse trailer, it is questionable whether automobile liability insurance should be extended so far as to cover this kind of accident, when the stated purposes of the No–Fault Act are (1) to relieve the severe economic distress of uncompensated victims of *automobile,* not trailer, accidents and (2) to correct imbalances and abuses in the operation of the automobile accident tort liability system. *Galle v. Excalibur Insurance Co.,* 317 N.W.2d 368, 371 (Minn. 1982). Sumption's premises liability insurance appears to be a more appropriate source of compensation for an injury which occurred near a motor vehicle, but was not obtained during the "maintenance or use" of that motor vehicle, as the phrase is defined in Sumption's auto insurance policy.

### DECISION

The statutory definition of "maintenance or use of a motor vehicle" applies to all

automobile insurance policies issued pursuant to Minn.Stat. Ch. 65B. Although an accident which occurs while loading a horse into a horse trailer demonstrates sufficient causal connection between the injury and the use of that motor vehicle "for transportation purposes," the injured person is not entitled to recover under another's auto liability insurance unless the injury occurred while the injured person was occupying, entering or alighting from the motor vehicle.

Reversed.