# Order

**Michigan Supreme Court**
Lansing, Michigan

July 29, 2005

Clifford W. Taylor
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Justices

126538

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellant,

v

    SC: 126538
    COA: 242376
    Wayne CC: 01-010083-01

MARIO CURVAN,
      Defendant-Appellee.

_____/

On order of the Court, leave to appeal having been granted and the Court having considered the briefs and oral arguments of the parties, that portion of the order of November 4, 2004 which granted leave to appeal is VACATED and leave to appeal is DENIED, because we are no longer persuaded that the questions presented should be reviewed by this Court.

KELLY, J., concurs and states as follows:

I agree with the decision to vacate this Court's order granting leave. I write only because Justice Corrigan's dissent evokes a response. It pictures a parade of horribles that she envisions if *People v Wilder*[1] and *People v Harding*[2] are not overturned. I believe that her concerns are unrealistic.

First, neither the *Wilder* approach nor that advocated by Justice Corrigan changes the incentive for a defendant who kills someone during a robbery to engage in a crime spree. The incentive is the same under either theory. It is true that the defendant will be imprisoned for life with no possibility of parole regardless of whether he commits additional crimes. However, all capital crimes, once committed, arguably create the same "incentive" for a wrongdoer to blaze a trail of terror.

Additionally, the argument that a guilty person would go free is incorrect. First, her statement that a defendant is free from "any possibility of conviction" for the

---

[1] 411 Mich 328 (1981).

[2] 443 Mich 693 (1993).

underlying crime is inaccurate. A prosecutor may bring charges and a jury may convict a defendant of the underlying crime. Any vacation of the punishment for that underlying crime occurs only after the conviction. Second, it is most infrequent that a federal court grants habeas corpus relief. It is even rarer that relief is granted on a finding of insufficient evidence of a felony murder but sufficient evidence of the underlying felony.

But if that should happen, the defendant would not then walk the streets, a free individual, never paying the price for his crime. Rather, we can reasonably expect that the prosecutor would act promptly to obtain reinstatement of the conviction of the felony that served as the predicate for the felony-murder conviction. We should not expect that the prosecutor would fail in his or her duty to act with dispatch. The action we can anticipate from the prosecutor would prevent a defendant from walking free.

In short, despite Justice Corrigan's fear that a guilty individual may go free,[3] it appears that such an event would never occur.

WEAVER, J., dissents and states as follows:

I dissent from the order to vacate this Court's previous order, which granted leave to appeal,[4] and to deny leave to appeal in this case. I would decide this case.

In deciding this case, I would adopt the concurrence/dissent of Justice Riley in *People v Harding,* 443 Mich 693, 721-734 (1993), as the proper approach for double jeopardy claims involving multiple punishments. Under that approach, I would conclude, like Justice Riley, that double jeopardy principles do not prohibit sentencing defendant for both felony murder and the underlying felony of armed robbery because the Legislature intended to allow dual punishments for both crimes. Therefore, I would overrule *People v Wilder*, 411 Mich 328 (1981), and *People v Harding, supra,* and I would reverse the Court of Appeals vacation of defendant's armed robbery conviction.

CORRIGAN, J., dissents and states as follows:

I must respectfully dissent from the majority's decision to vacate this Court's order granting leave to appeal and to deny leave to appeal.

---

[3] This reasoning can be dubbed *argumentum ad baculum*, an appeal to force or fear. The Latin term literally means "argument to the stick." The argument contains a fundamental fallacy along with an implied threat.

[4] 471 Mich 914 (2004).

In recent years, this Court has attempted to articulate coherently the meaning of our state analogue to the federal double-jeopardy provision. For example, in *People v Nutt*, 469 Mich 565 (2004), we clarified that the *Blockburger*[5] same-elements test should be used to discern whether two offenses that have been prosecuted successively are the same. Earlier this term, in *People v Davis*, 472 Mich 156 (2005), we held that the double-jeopardy prohibition does not preclude a prosecution in Michigan following a prosecution by another state for the same criminal acts because each state derives its authority to punish from distinct sources of power.

This case provides an opportunity to further clarify the appropriate method of analyzing double-jeopardy claims. In *People v Wilder*, 411 Mich 328 (1981), and *People v Harding*, 443 Mich 693 (1993), this Court announced that a defendant who has been convicted of felony murder, MCL 750.316(1)(b), may not be separately punished for the predicate felony underlying that murder. The rule invented in *Wilder* and *Harding* is flawed. Felony murder and the underlying felony in this case, armed robbery, MCL 750.529, plainly are not the "same offense." On the contrary, as Justice Riley's partial concurrence and partial dissent in *Harding* explains, the statutes prohibiting felony murder and armed robbery protect distinct societal interests. Moreover, the structure of our first-degree murder statute reflects that felony murder is a category of murder, and not merely an enhanced form of armed robbery.

By refusing to decide this case, the majority essentially abandons any effort to clarify our jurisprudence on this subject, or to correct this Court's unwarranted conflation of wholly separate offenses. Rather than adopt the sound analytical approach articulated by Justice Riley in *Harding*, the majority avoids deciding this case despite having received full briefing and having heard oral argument. The majority thereby leaves intact a judicial diktat that felony murder and armed robbery are the "same offense," contrary to the Legislature's clearly expressed intent to create separate offenses.

The majority's refusal to reject the fiction that plainly separate offenses are somehow the "same" is troubling not only because that fiction fails to honor the intent of our Legislature, but also because it may have dangerous consequences in the real world. Suppose that a defendant pulls a gun on a clerk in a store and kills a bystander. The defendant then takes property from the store clerk. Under *Wilder* and *Harding*, the defendant is free to take property from the clerk after killing the bystander *without any possibility of conviction and sentence for armed robbery*. Until the *Wilder/Harding* rule is corrected, *any* defendant in this situation will be free to commit armed robbery because the state will be barred from imposing punishment for both felony murder and the underlying armed robbery.

---

[5] *Blockburger v United States*, 284 US 299 (1932).

Moreover, suppose that the defendant's felony-murder conviction is later overturned by a federal court on habeas corpus review because the federal court deems the evidence of malice to be insufficient, and that, under *Wilder* and *Harding*, the defendant's armed robbery conviction has already been vacated by a state appellate court. It is quite possible that the defendant will then be completely free of any punishment, despite having been found guilty of armed robbery by a jury.

Justice Kelly attempts to discount the possibility of such a defendant avoiding punishment. She asserts that "it is most infrequent that a federal court grants habeas corpus relief," and that "[i]t is even rarer that relief is granted on a finding of insufficient evidence of a felony murder but sufficient evidence of the underlying felony." *Ante* at 2. Even accepting that Justice Kelly's empirical pronouncements, for which she cites no authority or evidence, are true, a danger would still remain under our current jurisprudence. If *even one* such defendant avoids punishment for an offense of which he has been properly adjudged guilty by a jury because of the erroneous decisions in *Wilder* and *Harding*, the result could be devastating. Therefore, I must respectfully question whether the majority has adequately considered the effect of *Wilder* and *Harding* on the public interest in protecting society from those who have been properly convicted of crimes, as well as the public interest in deterrence of crimes.

Justice Kelly further argues that any defendant who is granted habeas corpus relief in this situation would not be free to "walk the streets." *Ante* at 2. She says that "we can reasonably expect that the prosecutor would act promptly to obtain reinstatement of the conviction of the felony that served as the predicate for the felony-murder conviction." *Id.* But Justice Kelly offers no explanation for why she believes that a defendant's conviction and sentence for the predicate felony may be reinstated after having been vacated under *Wilder* and *Harding*. She does not cite a single authority to support this view, nor does she address whether reinstating such a conviction would itself carry double-jeopardy implications. Justice Kelly also fails to explain whether her position is consistent with the very cases at issue here. Under *Wilder* and *Harding*, a defendant may not be separately punished for the predicate felony underlying a felony-murder conviction.[6]

---

[6] In addition, I must respectfully disagree with Justice Kelly's assertion that my argument "appeal[s] to force or fear" and "contains a fundamental fallacy along with an implied threat." *Id.* n 3. In truth, I have merely attempted to describe what I believe to be the troubling ramifications and perverse incentives that flow from this Court's decisions in *Wilder* and *Harding*. I believe that the practical, real-world implications of *Wilder* and *Harding* are worth noting because they call into question the majority's refusal to decide this case following briefing and oral argument. Justice Kelly may not share my concerns about *Wilder* and *Harding*, but our principled disagreement about the appropriate course

(continued...)

I. Underlying facts and procedural history

Frank Bono was discovered lying in a pool of blood inside his laundromat. A screwdriver was impaled in his neck. The cash register was open, and the cash was gone. Bono died from blunt force trauma to the head. Defendant admitted to the police that he and an accomplice had gone to the laundromat with the intent to rob Bono. Defendant acted as a lookout. The accomplice hit Bono in the head with defendant's hammer and then stabbed him in the neck with a screwdriver. The accomplice took some money and gave defendant fifteen or twenty dollars.

Following a jury trial, defendant was convicted of felony murder and armed robbery. He was sentenced to mandatory life imprisonment for the felony-murder conviction and to a twenty- to forty-year term of imprisonment for the armed robbery conviction.

The Court of Appeals vacated the armed robbery conviction on the ground that defendant's convictions and sentences for both felony murder and the predicate felony violated the constitutional prohibition against multiple punishments for the same offense.[7] The Court of Appeals noted, however, that in *Nutt, supra* at 596, this Court had overruled *People v White*, 390 Mich 245 (1973), and thus abandoned the "same transaction" test used to apply the Double Jeopardy Clause in favor of the "same-elements test" set forth in *Blockburger*. In *Nutt*, we limited our holding to the successive-prosecutions strand of Const 1963, art 1, § 15, stating that we were not concerned with the meaning of the term "offense" as it applies to the double-jeopardy protection against multiple punishments. *Nutt, supra* at 575 n 11. In light of this language in *Nutt*, the Court of Appeals determined that it remained bound by *Wilder* to conclude that multiple punishments for felony murder and the predicate felony of armed robbery were not permitted.

This Court granted the prosecution's application for leave to appeal.[8]

---

(...continued)
of action in this case does not turn my argument into "an implied threat" or "an appeal to force or fear." *Id.*

[7] Unpublished opinion per curiam, issued June 29, 2004 (Docket No. 242376).

[8] 471 Mich 914 (2004).

## II. Standard of review

Whether the constitutional protection against double jeopardy prohibits separate punishments for felony murder and the predicate felony of armed robbery is a question of law that this Court reviews de novo. *Nutt, supra* at 573.

## III. Analysis

The United States Constitution and the Michigan Constitution protect a person from being twice placed in jeopardy for "the same offense." US Const, Am V; Const 1963, art 1, § 15. The prohibition against double jeopardy includes three protections: "(1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *Nutt, supra* at 574. The first two of these protections are generally referred to as the successive-prosecutions strand of double-jeopardy protection, while the third is known as the multiple-punishments strand.

In *Nutt*, this Court adopted the *Blockburger* same-elements test for determining whether two offenses are the "same" for purposes of the successive-prosecutions strand. The *Blockburger* test "'focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.'" *Id*. at 576 (citation omitted).

While the *Blockburger* test now applies to successive-prosecutions claims in Michigan, it has not been extended to multiple-punishments claims. The test articulated in *People v Robideau*, 419 Mich 458 (1984), continues to govern a court's analysis of multiple-punishments claims in Michigan.[9]

In *Robideau*, this Court reviewed several United States Supreme Court decisions and concluded that the central question in resolving multiple-punishments claims is whether the Legislature intended to allow multiple punishments. The *Robideau* Court questioned the status of the *Blockburger* test in discerning that intent. The Court set forth what it viewed as more traditional means of determining legislative intent, including identifying the type of harm the Legislature intended to prevent and the amount of punishment authorized. "Statutes prohibiting conduct that is violative of distinct social norms can generally be viewed as separate and amenable to permitting multiple punishments. . . . Where two statutes prohibit violations of the same social norm, albeit

---

[9] The parties in this case do not argue that the *Robideau* test should be repudiated.

in a somewhat different manner, as a general principle it can be concluded that the Legislature did not intend multiple punishments." *Id*. at 487.

The *Robideau* Court asserted that its mode of analysis was consistent with the result reached in *Wilder* prohibiting dual convictions of felony murder and the predicate felony of armed robbery, reasoning that the two offenses have different penalties. *Id*. at 489 n 8.

In *Harding*, the majority reaffirmed the analysis in *Robideau* and the result in *Wilder*. The *Harding* majority stated that the felony-murder provision of the first-degree murder statute "serves to raise what would otherwise be second-degree murder to first-degree murder—for the sole purpose of increasing punishment." *Harding, supra* at 711 (opinion of Brickley, J.). Because felony murder carries a greater penalty than the predicate felony, the *Harding* majority concluded that the Legislature did not intend to impose punishments for both crimes, and that sentencing the defendants for both crimes violated the state and federal double-jeopardy provisions.

In her opinion in *Harding*, Justice Riley agreed that the dispositive question is whether the Legislature intended to allow dual punishments. She followed the *Robideau* framework of assessing legislative intent through traditional means rather than through the *Blockburger* test. She explained that while the United States Supreme Court has utilized the *Blockburger* test to determine the intent of Congress, Michigan courts are not bound to apply that test. "That the tests utilized by this Court and the United States Supreme Court regarding the finding of the legislative intent of their respective legislatures differ does not result in a clash of constitutional analysis, but simply a recognition that separate jurisdictions may utilize independent modes of statutory construction." *Harding, supra* at 729 n 21. This conflict does not endanger double-jeopardy protections as long as both jurisdictions recognize their duty to discern whether the legislature intended to authorize the punishment at issue. *Id*.

Applying the *Robideau* analysis, Justice Riley concluded that our Legislature intended to allow dual punishments for felony murder and armed robbery. She noted that the maximum punishment for armed robbery is life imprisonment; thus, each offense may be punished by life imprisonment.[10] *Id*. at 730. Moreover, Justice Riley explained that distinct social harms were targeted by the two statutes. After analyzing the elements of each offense, Justice Riley observed that the felony-murder statute protects against homicide committed with malice, whereas the armed robbery statute punishes the taking

---

[10] Justice Riley recognized that the mandatory punishment for felony murder was life imprisonment without the possibility of parole, but she did not view the distinction between the punishments for the two offenses as dispositive. *Id*. at 730 n 23.

of property by force. *Id*. at 731.

Thus, first-degree murder focuses upon homicide, armed robbery upon the violent deprivation of property. The first-degree murder statute does not punish the taking of property except when accompanied by a homicide. Nor does the armed robbery statute punish homicide. The societal interests are independent. In fact, the societal interests targeted by the felony murder provision of the first-degree murder statute generally are distinct from the underlying felonies. Felony murder is designed to punish homicide committed in the course of aggravated circumstances, while the societal interests undergirding the enumerated felonies are independent and also important to maintain. That the societal interests in prohibiting rape and kidnapping, for instance, are distinct from those prohibiting murder cannot be doubted. In a parallel fashion, the societal interests served by armed robbery and the first-degree murder statutes are distinct.

This is especially true in Michigan where felony murder requires malice. *People v Aaron*, 409 Mich 672, 728; 299 NW2d 304 (1980). The societal interest in prohibiting first-degree murder is not only homicide, but one committed with malice. *Id*. Armed robbery, of course, does not possess such a requirement. "[T]he presence of the different intent elements indicates that the Legislature intended to prevent distinct types of harm, robbery and corporal harm," as well as intended to address separate social ills. *People v Smith*, 152 Mich App 756, 761; 394 NW2d 94 (1986) (holding that multiple punishments were intended with regard to assault with intent to do great bodily harm and assault with intent to rob and steal while armed). See also *People v Leach*, 114 Mich App 732, 735-736; 319 NW2d 652 (1982) (holding that multiple punishments were intended with regard to armed robbery and assault with intent to commit great bodily harm). The Legislature carefully crafted distinct offenses defending separate societal interests that defendants violated. Punishment for each offense was intended by the Legislature. [*Harding, supra* at 732-733.]

I agree with Justice Riley's persuasive analysis of the legislative intent underlying the first-degree murder and armed robbery statutes. The *Harding* majority paid insufficient regard to the distinct societal interests protected by the respective statutes. Justice Riley correctly articulated the manner in which the societal interests protected by the two statutes differ.

While it is not necessary to my analysis, I note that persuasive authorities from other jurisdictions support Justice Riley's view. In *Todd v State*, 884 P2d 668, 677-680 (Alas App, 1994), the Alaska Court of Appeals summarized the holdings of various state courts on this subject. Many state courts have concluded that their respective legislatures

intended to allow multiple punishments for felony murder and the underlying felony on the basis of the distinct interests protected. See, e.g., *Todd, supra* at 685; *State v Blackburn*, 694 SW2d 934, 937 (Tenn, 1985); *Fitzgerald v Commonwealth*, 223 Va 615, 636-637 (1982); *State v Greco*, 216 Conn 282, 295-296 (1990); *Talancon v State*, 102 Nev 294, 300 (1986). While contrary authorities also exist, the *Todd* court concluded that "the great majority" of state courts that analyzed the constitutional issue on the basis of the intent of the state legislature had upheld separate punishments for felony murder and the underlying felony. *Todd, supra* at 679.[11]

In *Greco*, the Connecticut Supreme Court articulated the distinct interests protected by the respective statutes at issue:

> An obvious purpose of the felony murder statute, or any murder statute, is to protect human life. In contrast, "[t]he basic rationale [of the robbery statutes] is protection against the terror of the forcible taking"[,] while the primary rationale of the crime of burglary is "protection against invasion of premises likely to terrorize occupants." Each of these three statutes penalizes a different type of evil. Since the felony murder statute and the underlying felony statutes are designed to address separate evils, they provide clear evidence that the legislature intended multiple punishments. [*Greco, supra* at 296 (citations omitted).]

Legislative intent may also be inferred from the overall statutory scheme. *Harding, supra* at 730 n 24 (Riley, J., concurring in part and dissenting in part), citing *People v Campbell*, 165 Mich App 1, 5 (1987). The structure of our first-degree murder statute reflects no intent to preclude multiple punishments for felony murder and a predicate felony. Felony murder is merely a classification of the crime of murder. It is not an enhanced degree of the predicate felony.

Foreign authorities support this structural analysis. The Virginia Supreme Court explained in *Fitzgerald* that its legislature had enacted the felony-murder statute in an effort to classify the types of murder. "The overriding purpose of the murder statutes being gradation, we can divine no legislative intent to eliminate punishment for other offenses included in the murder statutes solely for the purpose of categorizing the murder." *Fitzgerald, supra* at 636. Similarly, the Connecticut Supreme Court explained in *Greco, supra* at 294-297, that the felony-murder statute set forth a method of

---

[11] The *Todd* court did not state that the majority of states permitted dual punishments for felony murder and the predicate felony, but only that the majority of states that analyzed the constitutional issue *on the basis of legislative intent* had concluded that multiple punishments for the two offenses were allowed.

committing murder, and that the statute did not represent merely an increased penalty provision for the underlying felonies.

The structure of our first-degree murder statute supports the same conclusion. MCL 750.316 sets forth three categories of first-degree murder: (1) "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing"; (2) "[m]urder committed in the perpetration of, or attempt to perpetrate," any of several enumerated predicate felonies; and (3) murder of a peace officer or corrections officer. The structure of this statutory scheme reflects that felony murder is one of three classifications of first-degree murder. The predicate felonies are used to differentiate the crime from the other two types of first-degree murder, and from second-degree murder, MCL 750.317, rather than merely to enhance the penalty for the enumerated predicate felonies.

For these reasons, I would overrule *Wilder* and *Harding* and adopt Justice Riley's opinion in *Harding*. Rather than decide this case, the majority vacates our order granting leave to appeal and denies leave to appeal. By its refusal to decide this case, the majority leaves intact perverse incentives spawned by *Wilder* and *Harding*. Justice Riley's opinion in *Harding, supra* at 733-734, discussed the danger posed by the majority's holding in *Harding*. She quoted the following language from *People v Wakeford*, 418 Mich 95, 105 n 7 (1983):

> We have never held, as a matter of state or federal constitutional law, that only one conviction may result, for example, from the rape, robbery, kidnapping, and murder of victim A . . . even if the charges must be brought in a single trial under the "same transaction" test [i.e., the test adopted in *White*, which this Court overruled in *Nutt*]. Such a rule could be said to permit criminals to engage in an extended crime "spree," knowing that at most only one conviction could result and that any crime other than the most serious was "free" of any possibility of conviction. It would offend rationality, as well as our sense of equal justice, to require treatment of one defendant committing a single crime identically with another defendant committing four counts of the same crime in the "same transaction."

Justice Riley explained in *Harding, supra* at 734, that "the majority's dismissal of the armed robbery conviction in the instant case presents the exact danger of which the Court forewarned in *Wakeford*."

Similarly, I question whether the majority here, by refusing to decide this case, has adequately considered the dangerous implications of the *Wilder* and *Harding* decisions. As discussed above, a defendant who kills a bystander while robbing a store will face no risk of an additional conviction by going through with the robbery after committing the

murder. In effect, the defendant gets a "free" armed robbery under *Wilder* and *Harding*.

Moreover, a defendant in this situation may well face no punishment whatsoever if his felony-murder conviction is overturned on federal habeas review, because his conviction for the predicate offense will have been vacated under *Wilder* and *Harding*. This result is troubling because, despite having been adjudged guilty by a jury of armed robbery, the defendant would quite possibly face no punishment for that offense. These troubling ramifications of the *Wilder* and *Harding* decisions therefore warrant this Court's attention.

## IV. Conclusion

On the basis of Justice Riley's opinion in *Harding*, I would hold that sentencing a defendant for both felony murder and the predicate felony of armed robbery does not violate the multiple-punishments strand of the constitutional protection against double jeopardy. I would therefore overrule *Wilder* and *Harding* to the extent that they are inconsistent with this holding. Accordingly, this Court should reverse the judgment of the Court of Appeals and reinstate defendant's conviction and sentence for armed robbery.

t0726



I, CORBIN R. DAVIS, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

_July 29_____, 200 5          Corbin R Davis_____

                                                    Clerk