**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED MAY 31, 2006

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                           No. 128294

JOEZELL WILLIAMS II,

    Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                           No. 128533

JOEZELL WILLIAMS II,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

MEMORANDUM.

    In this case, we examine the double-jeopardy concerns[1] that are involved

---

[1] Const 1963, art 1, § 15.

when a defendant who has committed a felony and a concurrent, single homicide is charged with and convicted of first-degree premeditated murder, first-degree felony-murder, and the felony underlying the felony-murder charge. Under the current case law, to avoid double-jeopardy implications, the defendant receives one conviction of first-degree murder, supported by two theories, and the conviction of the predicate felony underlying the felony murder is vacated. See *People v Wilder*, 411 Mich 328; 308 NW2d 112 (1981); *People v Bigelow* 229 Mich App 218; 581 NW2d 744 (1998). The defendant thus receives one conviction and one sentence for having committed one crime.

In this case, the trial court followed that procedure in part, and the Court of Appeals affirmed in part and vacated in part, but invited us to consider modifying *Bigelow*. 265 Mich App 68; 692 NW2d 722 (2005). We decline to do so, affirming the judgment of the Court of Appeals, and we provide a brief analysis of our reasoning.

The prosecutor in this case is concerned that if the judgment vacates defendant's larceny conviction, in the unlikely situation that defendant's conviction of murder is overturned for some reason unrelated to his conviction of larceny, defendant could "go free" even though there is no question that he was found guilty of larceny. Although such a situation is unprecedented in Michigan case law, we find reassurance in the federal law that these concerns are groundless. Although the United States Supreme Court has not considered this specific context, it came close in *Rutledge v United States*, 517 US 292; 116 S Ct

1241; 134 L Ed 2d 419 (1996).  We believe *Rutledge* presents the correct method of handling this case.

In *Rutledge*, the defendant was convicted of both conducting a continuing criminal enterprise (CCE) and conspiracy to distribute a controlled substance and was sentenced to two concurrent life sentences.  The Court held that under the common-elements test of *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932), the conspiracy was a lesser included offense of CCE.  The Court then found that the defendant could not receive two sentences and that the second conviction, even without a second sentence, was presumptively impermissible under *Ball v United States*, 470 US 856; 105 S Ct 1668; 84 L Ed 2d 740 (1985).[2]

Next, the Court addressed the government's concern that without a "backup" conviction, the defendant might escape punishment altogether if he successfully challenged the CCE conviction in a manner that did not affect his conspiracy conviction.  *Rutledge* at 305.  The Court found "no reason why this pair of greater and lesser offenses should present any novel problem," and noted that "federal appellate courts appear to have uniformly concluded that they may direct the entry of judgment for a lesser included offense when a conviction for a

---

[2] The Court did not ultimately decide whether the second conviction was impermissible under *Ball* alone because the fact that each conviction carried its own $50 "special assessment" established a second punishment, even without a second prison term. *Rutledge* at 301.

3

greater offense is reversed on grounds that affect only the greater offense." *Id.* at 306. Justice Stevens continued, "This Court has noted the use of such a practice with approval." *Id.*

Under this approach, if defendant's murder conviction is reversed on grounds only affecting the murder element, entry of a judgment of conviction of larceny may be directed by the appellate court. Such was the practice of this Court in, for example, *People v Randolph*, 466 Mich 532, 553; 648 NW2d 164 (2002), and *People v Bearss*, 463 Mich 623, 631; 625 NW2d 10 (2001). We continue to support this approach and thus affirm defendant's conviction.[3]

Affirmed.

Clifford W. Taylor
Michael F. Cavanagh
Marilyn Kelly
Robert P. Young, Jr.
Stephen J. Markman

---

[3] In all other respects, the application for leave to appeal in Docket No. 128533 is denied.

4

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellant,

v                                         No. 128294

JOEZELL WILLIAMS II,

     Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v                                         No. 128533

JOEZELL WILLIAMS II,

     Defendant-Appellant.

_____

WEAVER J. (*dissenting*).

     I dissent from the majority's decision to affirm the Court of Appeals judgment that vacated defendant's conviction of larceny from the person of another and would affirm defendant's convictions because I continue to adhere to the position expressed in my dissent in *People v Curvan,* 473 Mich 896 (2005).

                                 Elizabeth A. Weaver

# STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellant,

v                                                   No. 128294

JOEZELL WILLIAMS II,

     Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v                                                   No. 128533

JOEZELL WILLIAMS II,

     Defendant-Appellant.

_____

CORRIGAN, J. (*dissenting*).

     I respectfully dissent from the majority's declination to tackle the central question presented in this case, i.e., whether double-jeopardy principles prohibit the imposition of multiple punishments for the underlying offense of larceny from the person of another, MCL 750.357, and first-degree murder based on alternative theories of premeditated murder and felony murder, MCL 750.316(1). I would hold this case in abeyance for the decision in *People v Smith* (Docket No. 130353), lv gtd 475 Mich ___ (2006), in which we have granted leave to appeal to consider

the appropriate test for resolving a "multiple punishments" double-jeopardy claim that arose from a conviction of armed robbery, MCL 750.529, and felony murder based on a predicate felony of larceny.

An abeyance for *Smith* is appropriate for the following reasons:

First, this case and *Smith* are in similar postures. In both cases, the defendant received dual convictions for felony murder and a predicate felony or an offense related to the predicate felony. In *Smith*, the defendant was convicted of armed robbery and felony murder based on larceny. In this case, the defendant was convicted of larceny from the person of another and first-degree murder based on alternative theories of premeditated murder and felony murder.

Second, both cases potentially present the question whether *People v Robideau*, 419 Mich 458; 355 NW2d 592 (1984), or *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932), sets forth the proper test to determine whether multiple punishments are barred on double-jeopardy grounds under Const 1963, art 1, § 15. Our grant order in *Smith* directed the parties to consider "this Court's prior precedent in 'multiple punishment' claims and the common understanding of 'same offense' as it relates to the 'multiple punishments' prong of double jeopardy. Cf. *People v Nutt*, 469 Mich 565 (2004)." *Smith*, *supra* at ___.

Thus, our resolution of the appropriate test in *Smith* may offer guidance in addressing the "multiple punishments" claim in this case. If this Court decides in *Smith* that the *Blockburger* test governs the resolution of multiple punishments

claims, then we should consider the proper application of that test in this case. Therefore, because an abeyance for *Smith* is warranted, I must respectfully dissent.

Next, I will articulate what I believe to be the correct disposition of this case under the currently controlling *Robideau* test. For the following reasons, I believe that double jeopardy does not preclude the imposition of multiple punishments for larceny from the person of another and first-degree murder based on alternative theories of premeditation and felony murder.

In *People v Curvan*, 473 Mich 896 (2005) (Corrigan, J., dissenting), I agreed with Justice Riley's dissenting view in *People v Harding*, 443 Mich 693; 506 NW2d 482 (1993), that felony murder and the predicate offense of armed robbery are not the "same offense" for the purposes of the protection against double jeopardy. Plainly, the two offenses protect against distinct societal harms. Felony murder punishes homicide committed with malice in the course of a felony, while armed robbery protects against the violent deprivation of property. *Id*. Moreover, the structure of the first-degree murder statute reflects that felony murder is one of three classifications of the crime of first-degree murder. The predicate felonies are used to differentiate felony murder "from the other two types of first-degree murder, and from second-degree murder, MCL 750.317, rather than merely to enhance the penalty for the enumerated predicate felonies." *Curvan*, *supra* at 904 (Corrigan, J., dissenting).

As in *Curvan*, the majority here again declines to answer a fairly straightforward question: Are first-degree murder supported by alternative

3

theories and larceny from the person the "same offense"? Under our current test set forth in *Robideau*, legislative intent is the fundamental criterion in discerning whether multiple punishments are authorized. Although this Court held in *People v Wilder*, 411 Mich 328; 308 NW2d 112 (1981), and *Harding*, *supra*, that separate convictions and sentences for felony murder and the underlying felony are not permitted, this Court has never addressed whether multiple punishments for an underlying felony and first-degree murder are permitted where, as here, the murder conviction is based on alternative theories of premeditated murder and felony murder.[1]

I would decide this case on the basis of the views I expressed in *Curvan*. First-degree murder and the underlying felony of larceny from the person simply are not the "same offense." I can discern no indication that our Legislature ever prohibited multiple punishments for these distinct offenses. The two offenses protect against distinct social harms. That is particularly true where, as here, the murder conviction is supported by an alternative theory of premeditation. It cannot reasonably be disputed that protecting against a premeditated homicide is a

---

[1] The Court of Appeals special panel in *People v Bigelow*, 229 Mich App 218; 581 NW2d 744 (1998), of which I was a member, vacated the conviction for a felony underlying a murder conviction based on alternative theories of premeditated murder and felony murder. In his dissent in this case, Judge O'Connell, who was a member of the *Bigelow* special panel, opined that he and the other members of the *Bigelow* special panel had erred in holding that the underlying felony conviction must be vacated in this situation. I share Judge O'Connell's view that the special panel members in *Bigelow*, myself included, erred in this regard.

4

social interest that is distinct from the aim of preventing the taking of property from the person of another.

In lieu of answering any of these questions or holding this case in abeyance, the majority has imported a doctrine from federal case law allowing a conviction that has been vacated to be revived in certain circumstances. Because I question the majority's avoidance of the double-jeopardy issues that are so clearly before us, and because an abeyance for *Smith* is warranted, I respectfully dissent from the majority's decision.

Maura D. Corrigan