CORRIGAN, J.
0dissenting). I respectfully dissent from the majority’s declination to tackle the central question presented in this case, i.e., whether double-jeopardy principles prohibit the imposition of multiple punishments for the underlying offense of larceny from the person of another, MCL 750.357, and first-degree murder based on alternative theories of premeditated murder and felony murder, MCL 750.316(1). I would hold this case in abeyance for the decision in People v Smith (Docket No. 130353), lv gtd 475 Mich 864 (2006), in which we have granted leave to appeal to consider the appropriate test for resolving a “multiple punishments” double-jeopardy claim that arose from a conviction of *106 armed robbery, MCL 750.529, and felony murder based on a predicate felony of larceny.
An abeyance for Smith is appropriate for the following reasons:
First, this case and Smith are in similar postures. In both cases, the defendant received dual convictions for felony murder and a predicate felony or an offense related to the predicate felony. In Smith, the defendant was convicted of armed robbery and felony murder based on larceny. In this case, the defendant was convicted of larceny from the person of another and first-degree murder based on alternative theories of premeditated murder and felony murder.
Second, both cases potentially present the question whether People v Robideau, 419 Mich 458; 355 NW2d 592 (1984), or Blockburger v United States, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932), sets forth the proper test to determine whether multiple punishments are barred on double-jeopardy grounds under Const 1963, art 1, § 15. Our grant order in Smith directed the parties to consider “this Court’s prior precedent in ‘multiple punishment’ claims and the common understanding of ‘same offense’ as it relates to the ‘multiple punishments’ prong of double jeopardy. Cf. People v Nutt, 469 Mich 565 (2004).” Smith, supra at 864.
Thus, our resolution of the appropriate test in Smith may offer guidance in addressing the “multiple punishments” claim in this case. If this Court decides in Smith that the Blockburger test governs the resolution of multiple punishments claims, then we should consider the proper application of that test in this case. Therefore, because an abeyance for Smith is warranted, I must respectfully dissent.
Next, I will articulate what I believe to be the correct disposition of this case under the currently controlling *107 Robideau test. For the following reasons, I believe that double jeopardy does not preclude the imposition of multiple punishments for larceny from the person of another and first-degree murder based on alternative theories of premeditation and felony murder.
In People v Curvan, 473 Mich 896 (2005) (CORRIGAN, J., dissenting), I agreed with Justice Riley’s dissenting view in People v Harding, 443 Mich 693; 506 NW2d 482 (1993), that felony murder and the predicate offense of armed robbery are not the “same offense” for the purposes of the protection against double jeopardy. Plainly, the two offenses protect against distinct societal harms. Felony murder punishés homicide committed with malice in the course of a felony, while armed robbery protects against the violent deprivation of property. Id. Moreover, the structure of the first-degree murder statute reflects that felony murder is one of three classifications of the crime of first-degree murder. The predicate felonies are used to differentiate felony murder “from the other two types of first-degree murder, and from second-degree murder, MCL 750.317, rather than merely to enhance the penalty for the enumerated predicate felonies.” Curvan, supra at 904 (Corrigan, J., dissenting).
As in Curvan, the majority here again declines to answer a fairly straightforward question: Are first-degree murder supported by alternative theories and larceny from the person the “same offense”? Under our current test set forth in Robideau, legislative intent is the fundamental criterion in discerning whether multiple punishments are authorized. Although this Court held in People v Wilder, 411 Mich 328; 308 NW2d 112 (1981), and Harding, supra, that separate convictions and sentences for felony murder and the underlying felony are not permitted, this Court has never ad *108 dressed whether multiple punishments for an underlying felony and first-degree murder are permitted where, as here, the murder conviction is based on alternative theories of premeditated murder and felony murder.[1]
I would decide this case on the basis of the views I expressed in Curvan. First-degree murder and the underlying felony of larceny from the person simply are not the “same offense.” I can discern no indication that our Legislature ever prohibited multiple punishments for these distinct offenses. The two offenses protect against distinct social harms. That is particularly true where, as here, the murder conviction is supported by an alternative theory of premeditation. It cannot reasonably be disputed that protecting against a premeditated homicide is a social interest that is distinct from the aim of preventing the taking of property from the person of another.
In lieu of answering any of these questions or holding this case in abeyance, the majority has imported a doctrine from federal case law allowing a conviction that has been vacated to be revived in certain circumstances. Because I question the majority’s avoidance of the double-jeopardy issues that are so clearly before us, and because an abeyance for Smith is warranted, I respectfully dissent from the majority’s decision.

 The Court of Appeals special panel in People v Bigelow, 229 Mich App 218; 581 NW2d 744 (1998), of which I was a member, vacated the conviction for a felony underlying a murder conviction based on alternative theories of premeditated murder and felony murder. In his dissent in this case, Judge O’Connell, who was a member of the Bigelow special panel, opined that he and the other members of the Bigelow special panel had erred in holding that the underlying felony conviction must be vacated in this situation. I share Judge O’Connell’s view that the special panel members in Bigelow, myself included, erred in this regard.