CAVANAGH, J.
(dissenting). Today, the majority overrules longstanding precedent and replaces it with a holding that will fail to preserve the constitutional protection against double jeopardy. The majority misapplies the test enunciated by Blockburger v United States, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932), *243 and, in doing so, unconstitutionally subjects defendant to multiple punishment for the same offense. Thus, I respectfully dissent.
The Double Jeopardy Clause of the Michigan and United States constitutions protects against both successive prosecutions and multiple punishments for the “same offense.”[1] This case concerns the prohibition against imposing multiple punishments for the same offense. The United States Supreme Court has stated that in the multiple-punishment context, the interest that the Double Jeopardy Clause seeks to protect is “ ‘limited to ensuring that the total punishment did not exceed that authorized by the legislature.’ ” Jones v Thomas, 491 US 376, 381; 109 S Ct 2522; 105 L Ed 2d 322 (1989), quoting United States v Halper, 490 US 435, 450; 109 S Ct 1892; 104 L Ed 2d 487 (1989). Thus, the controlling matter is legislative intent, because it determines whether multiple convictions impermissibly involve the same offense for purposes of the protection against multiple punishment. Whalen v United States, 445 US 684, 688-689; 100 S Ct 1432; 63 L Ed 2d 715 (1980).[2] The Supreme Court has described the Block-burger test as a “rule of statutory construction to help determine legislative intent.” Garrett v United States, 471 US 773, 778-779; 105 S Ct 2407; 85 L Ed 2d 764 (1985). In Blockburger, the Court held that “[t]he applicable rule is that, where the same act or transac *244 tion constitutes a violation of two distinct statutory-provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.” Blockburger, supra at 304.
This Court adopted Blockburger’s “same elements” test to determine whether multiple convictions would violate Michigan’s Double Jeopardy Clause in People v Smith, 478 Mich 292, 296; 733 NW2d 351 (2007). I dissented in Smith, because I believed that the use of the Blockburger test alone is not always sufficient to safeguard the double-jeopardy protections of the United States and Michigan constitutions. I continue to oppose this Court’s exclusive use of Blockburger to discern legislative intent, particularly in compound-offense cases. This case illustrates the error of the majority’s treatment of Blockburger. The majority misapplies the Blockburger test by comparing the abstract elements of a compound offense to one of its predicate offenses, rather than comparing the actual elements that were established at trial and that actually comprise the defendant’s convictions. In addition, the majority errs by accepting the result reached by its application of the Blockburger test without considering the fundamental matter of legislative intent.
The majority applies Blockburger to this case by comparing the abstract, statutory elements of felony murder with those of first-degree criminal sexual conduct (CSC-I).[3] MCL 750.316(l)(b); MCL 750.520b(l). It *245 observes that CSC-I contains the element of sexual penetration, while felony murder can be based on a different predicate offense that does not necessarily require proof of a sexual penetration. Ante at 241. The result of the majority’s approach is that the compound offense of felony murder and the predicate offense of CSC-I are deemed not to be the “same offense” because they each contain an element that the other does not. In support of this method, the majority eagerly cites authority that stands for the proposition that the Block-burger test operates by comparing the abstract legal elements of the respective offenses under consideration, not the actual proof of facts adduced at trial. Ante at 235-237.
Significantly, none of the United States Supreme Court cases cited by the majority for the proposition that Blockburger compels a comparison of abstract statutory elements involves a compound offense such as Michigan’s felony-murder statute.[4] Id. The Supreme *246 Court did not address Blockburger’s application to compound offenses until Whalen, which presented the opportunity to consider whether convictions for rape and for the killing of the same victim in the perpetration of rape could be sustained under the Double Jeopardy Clause. Whalen, supra at 685-686. The felony-murder statute at issue required proof of a killing and of the commission or attempted commission of one of six specified felonies, in the course of which the killing occurred.[5] Id. at 686. Rape was one of the specified felonies; it was also punishable separately under its own statutory provision. Id.
The Court relied on legislative history to determine that Congress intended the federal courts to apply the Blockburger test when construing the criminal provisions of the District of Columbia Code; thus, the Court applied the Blockburger test to the felony-murder and rape statutes. Id. at 692-693. Notably, the Court did not focus on the abstract statutory elements of these offenses, but, rather, compared the elements that were necessary to prove felony murder with those of the predicate felony. Id. at 694. It observed that “[a] conviction for killing in the course of a rape cannot be had without proving all the elements of the offense of rape.” Id. at 693-694. Thus, “Congress did not authorize consecutive sentences for rape and for a killing committed in the course of the rape, since it is plainly not the case that ‘each provision requires proof of a fact which the other does not.’ ” Id. at 693.
Moreover, the Court specifically rejected the argument that felony murder and rape were not the “same” offense under Blockburger simply because felony mur *247 der does not always require proof of a rape, but can be based on one of the other enumerated felonies. Id. at 694. The Court stated:
In the present case... proof of rape is a necessary element of proof of the felony murder, and we are unpersuaded that this case should be treated differently from other cases in which one criminal offense requires proof of every element of another offense. There would be no question in this regard if Congress, instead of listing the six lesser included offenses in the alternative, had separately proscribed the six different species of felony murder under six statutory provisions. It is doubtful that Congress could have imagined that so formal a difference in drafting had any practical significance, and we ascribe none to it. [Id,.]
In short, the Court unequivocally held that double-jeopardy analysis for compound offenses relies not on the abstract statutory elements of the offenses, but on the elements that actually comprise the convictions under consideration. Significantly, Whalen appeared to view its holding as consistent with Blockburger-, it never indicated that it was departing from Blockburger or that it was using a “same conduct” test, as the majority suggests. Ante at 236. Whalen simply recognizes that in applying the Blockburger test to compound offenses, it is essential to consider the elements of the actual predicate offense involved, rather than merely to compare the abstract elements of the offenses — an approach that would overlook the actual relationship between the convictions. Given that this Court has adopted the Blockburger test, Whalen’s approach to applying the Blockburger test to compound offenses should guide this Court’s application.
However, the majority implies that Whalen is no longer relevant authority. Ante at 237. To support its theory, the majority equates Whalen’s application of Blockburger with the “same conduct” test that was *248 adopted by Grady v Corbin, 495 US 508; 110 S Ct 2084; 109 L Ed 2d 548 (1990), which was overruled by United States v Dixon, 509 US 688; 113 S Ct 2849; 125 L Ed 2d 556 (1993).[6] But Whalen’s approach and the Grady “same conduct” test are meaningfully distinct; thus, it is erroneous to conclude that the overruling of Grady extends to Whalen as well. To begin with, Grady developed the “same conduct” test as a special accommodation for successive-prosecution cases only, while Whalen was a multiple-punishment case. Grady, supra at 520-521. Moreover, Grady indicated that the “same conduct” test was an additional inquiry to be made after the Blockburger test was applied, while Whalen simply described how to apply the Blockburger test to compound-offense cases. Id. at 521. Finally, unlike Grady, Whalen remained focused on the elements of the offenses, not the broader consideration of the conduct constituting the offenses. It is also noteworthy that when Dixon overruled Grady, it dismissed the notion that Harris v Oklahoma, 433 US 682; 97 S Ct 2912; 53 L Ed 2d 1054 (1977), had been an antecedent to Grady. Dixon, supra at 706. Harris mirrored Whalen’s conclusion in the context of a successive-prosecution case, and the majority has asserted that Harris and Whalen both used the Grady “same conduct” test. But Dixon itself rejected the suggestion that Harris applied the “same conduct” test: “Harris never uses the word ‘conduct,’ and its entire discussion focuses on the elements of the two offenses. See, e.g., 433 U.S. at 682-683, n. (to prove felony murder, ‘it was necessary for all the ingredients of the underlying felony’ to be proved).” Id.
*249 In sum, Dixon did not overrule Whalen, and none of the cases cited by the majority even hints that Whalen’s approach is inconsistent with the Blockburger test or with prevailing law. In fact, since Whalen was decided, a number of cases have followed or cited its rule.[7] The majority suggests that two arguably relevant Michigan cases I have not addressed in my dissent have fallen “down a memory hole,” ante at 232 n 7; 235 n 13, but meanwhile, the majority engages in the truly Orwellian tactic of arguing that Whalen has been overruled and is not to be followed, though in fact it remains valid United States Supreme Court precedent.The statutory provisions discussed in Whalen are similar to the provisions under consideration in this case, and I find Whalen’s reasoning applicable here. Defendant was convicted of felony murder under MCL 750.316(l)(b), which provides:
A person who commits any of the following is guilty of first degree murder and shall be punished by imprisonment for life:
(b) Murder committed in the perpetration of, or attempt to perpetrate, arson, criminal sexual conduct in the first, second, or third degree, child abuse in the first degree, a major controlled substance offense, robbery, carjacking, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, kidnapping, vulnerable adult abuse in the first and second degree under section 145n, torture under section 85, or aggravated stalking under section 411i. [Emphasis added.]
*250 Defendant was also convicted of CSC-I, MCL 750.520b(l):
A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists ... .[8]
Like the District of Columbia felony-murder statute examined in Whalen, the Michigan felony-murder statute lists several offenses that may serve as the predicate offense for felony murder. The predicate offenses are listed in the alternative, so a conviction for felony murder does not always require proof of CSC-I. But even though defendant was convicted under a statute listing a number of other possible predicate felonies, his conviction did not require proof of the elements of all of the possible predicate felonies; it only required proof of the elements of CSC-I. The information charging defendant and the jury instructions from his trial specify that the felony-murder charge was based on CSC-I. In other words, in defendant’s case, proof of all the elements of CSC-I was a necessary element of the felony-murder conviction. But applying the Blockburger test as the majority suggests — by comparing only the abstract statutory elements — will not reflect the reality that proof of CSC-I was necessarily included in defendant’s felony-murder conviction. When the abstract elements of a statute differ from the actual elements that can sustain a conviction under that statute, basing a comparison on the abstract statutory elements will not adequately protect against double jeopardy.
*251 This Court recognized this shortcoming in People v Wilder, 411 Mich 328; 308 NW2d 112 (1981), and reached a conclusion that was consistent with Whalen. In Wilder, this Court held that conviction of both felony murder and the underlying felony of armed robbery violates the Double Jeopardy Clause of the Michigan Constitution. Id. at 352. We observed that “the fact that the elements of first-degree felony murder do not in every instance require or include the elements of armed robbery does not mean the offense of armed robbery is not necessarily included in the felony murder here.” Id. at 345. For double-jeopardy analysis, “ ‘the question is not whether the challenged lesser offense is by definition necessarily included within the greater offense also charged, but whether, on the facts of the case at issue, it is.’ ” Id. at 346, quoting People v Jankowski, 408 Mich 79, 91; 289 NW2d 674 (1980). I would retain Wilder’s approach of relying “not upon the theoretical elements of the offense but upon proof of facts actually adduced” in determining whether multiple convictions are permitted under the Double Jeopardy Clause. Id. at 346. Thus, using the approach presented by Wilder and Whalen, the Blockburger test would indicate that convictions for both felony murder and the underlying CSC-I offense are not permissible because CSC-I contains no elements that are not also required for a felony-murder conviction.
Regardless of the method employed for comparing offenses for double-jeopardy purposes, legislative intent remains the determinative factor. The majority compounds its erroneous application of Blockburger by accepting its flawed result without considering the fundamental matter of legislative intent. After concluding that felony murder and CSC-I are not the same offense according to its construction of the Blockburger *252 test, the majority fails to consider whether this result resonates with discernable legislative intent. Ante at 238.
The United States Supreme Court has rejected the “application of Blockburger rule as a conclusive determinant of legislative intent, rather than as a useful canon of statutory construction . .. .” Garrett, supra at 779. Moreover, the Blockburger rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history; otherwise, the factual inquiry with regard to legislative intent would be transformed into a conclusive presumption of law. Id. In sum, the Court does not rely solely on Blockburger in determining whether multiple punishments are constitutionally prohibited; rather, the result of the Blockburger test is considered along with indications of legislative intent.
This procedure applies whether the outcome of the Blockburger test indicates that the offenses under consideration are the “same offense” or not. For example, in Whalen, the Court applied the Blockburger test and held that the two statutes in controversy proscribed the “same” offense. Whalen, supra at 694. Yet, the Court did not conclude its inquiry there; instead, it held that “where two statutory provisions proscribe the ‘same offense,’ they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent.” Id. at 692. The Court observed no clear appearance of congressional intent to impose cumulative punishments for the two offenses, so it held that cumulative punishments were not permitted. Id. at 695. Conversely, applying the Blockburger test in Albernaz resulted in the opposite conclusion from Whalen. There, the Court concluded that the two statutes at issue did not proscribe the same offense *253 under the Blockburger test because each provision required proof of a fact that the other did not. Albernaz, supra at 339. If the Blockburger test served as the exclusive means for determining legislative intent, the Court’s inquiry would have ended there. But instead, the Court elaborated:
The Blockburger test is a “rule of statutory construction,” and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent. Nothing, however, in the legislative history which has been brought to our attention discloses an intent contrary to the presumption which should be accorded to these statutes after application of the Blockburger test. [Id. at 340.]
The Court deduced that because the results of the Blockburger test were confirmed by the absence of evidence of legislative intent to the contrary, cumulative punishments of those particular offenses were permissible. Id. at 343-344.
Similar to the conclusion reached by Whalen Court, I see no evidence of legislative intent to impose multiple punishments for violations of Michigan’s felony-murder statute and the underlying felony. The felony-murder statute does not indicate that punishment for that offense should be imposed in addition to punishment for the underlying felony. By contrast, the felony-firearm statute, MCL 750.227b(2), provides:
A term of imprisonment prescribed by this section is in addition to the sentence imposed for the conviction of the felony or the attempt to commit the felony, and shall be served consecutively with and preceding any term of imprisonment imposed for the conviction of the felony or attempt to commit the felony.
*254 While an explicit reference to multiple punishments and consecutive sentencing is not the only way the Legislature could evince its intent to impose multiple punishment, the felony-firearm statute provides an example of a clear indication of legislative intent to impose multiple punishments.[9] In the case of the felony-murder statute, there is no such indication. In the absence of clear legislative intent to the contrary, I would conclude that the Legislature did not intend to impose punishments for felony murder and its necessarily required predicate felony.
In conclusion, I disagree with the majority’s application of Blockburger, which fails to account for the unique properties of compound and predicate offenses. I also dissent from the use of the Blockburger test as an exclusive means of discerning legislative intent for double-jeopardy purposes. I would retain Wilder's holding that multiple convictions for felony murder and the underlying felony violate the Double Jeopardy Clause of the Michigan Constitution, and, accordingly, would affirm the Court of Appeals.

 Const 1963, art 1, § 15; US Const, Ams V and XIV See also United States v Wilson, 420 US 332, 343; 95 S Ct 1013; 43 L Ed 2d 232 (1975), quoting North Carolina v Pearce, 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969).

 However, although the constitution grants the legislative branch exclusive authority to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, “[t]his is not to say that there are not constitutional limitations upon this power.” Whalen, supra at 689 n 3.

 The felony-murder statute lists several offenses that may serve as predicate offenses to felony murder, such as arson, CSC-I, robbery, kidnapping, and child abuse, among many others; they constitute the abstract, statutory elements of felony murder. However, the predicate offenses are listed in the alternative, so proof of all the possible predicate felonies listed as elements in felony murder’s statutory definition is not required to secure a conviction for felony murder.

 Iannelli v United States, 420 US 770; 95 S Ct 1284; 43 L Ed 2d 616 (1975), involved convictions for conspiring to violate and violating a federal gambling statute. lannelli did not rely on Blockburger to reach its conclusion, but rather, was convinced by “the history and structure of the Organized Crime Control Act of 1970,” which “manifestted] a clear and unmistakable legislative judgment” to treat conspiracy to violate the act and the consummated crime as separate offenses. Id. at 791.
Albernaz v United States, 450 US 333; 101 S Ct 1137; 67 L Ed 2d 275 (1981), concerned convictions for conspiracy to import marijuana and conspiracy to distribute marijuana. The issue was whether consecutive sentences could be imposed under those two provisions when the convictions arose from participation in a single conspiracy with multiple objectives. Id. at 336-337.
Blockburger considered whether a defendant could be convicted under two different statutes for a single criminal act — in particular, where a single sale of drugs violated a provision that prohibited selling the drug other than in its original packaging, as well as a provision that prohibited selling the drug not in pursuance of a written order of the purchaser. Blockburger, supra at 301.

 The provisions at issue were part of the District of Columbia Code.

 Grady describes the “same conduct” test as barring “any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.” Grady, supra at 521.

 See, e.g., Rutledge v United States, 517 US 292, 297 n 6; 116 S Ct 1241; 134 L Ed 2d 419 (1996); United States v Stafford, 831 F2d 1479, 1482 (CA 9, 1987); United States v Chalan, 812 F2d 1302, 1316-1317 (CA 10, 1987).

 The requisite circumstances are enumerated in MCL 7S0.520b(l)(a)-(h); in this case, the jury was required to find that defendant was armed at the time with a weapon or with any other object used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon. See MCL 750.520b(l)(e).

 The majority mischaracterizes my statement by stating that I effectively conclude “that multiple punishments can only be imposed if the Legislature has expressly stated that multiple punishments for specific offenses are permitted.” Ante at 238 n 16. In fact, I have plainly stated to the contrary.